# MICHAEL J. FOX *vs.* THE STATE OF MARYLAND.

*Constitutional Law—Oleomargarine—Sale in the Original Package —Sale of Oleomargarine Made of Deleterious Substances— Police Power—Appeal in Criminal Cases—Special Plea to Indictment.*

Under the decision of the Supreme Court of the United States in *Schollenberger's case*, 171 U. S., a State cannot prohibit the sale of oleomargarine, an article made from animal fats in imitation of natural butter, when it is imported from another State and sold in the original package.

But a State has the right to prohibit the manufacture of oleomargarine within its borders and its sale there. *Code*, Art. 27, sec. 88, prohibiting in general terms the manufacture or sale of oleomargarine must be construed so as to apply only to oleomargarine made in this State, or not sold in the original package when imported from another State.

In the exercise of its police power, the State has the right to make laws to prevent fraud and deception in articles of commerce and the sale of impure and deleterious articles of food, whether imported from another State and sold in the original package or not. Consequently, *Code*, Art. 27, sec. 89, prohibiting the sale of oleomargarine which is compounded with deleterious substances is applicable to such an article imported from another State and sold in the original package.

*Code*, Art. 27, sec. 89, provides that no person shall manufacture or sell any article in imitation of natural butter made from animal fat

or oils "nor mix, compound with, or add to milk, cream or butter any acids or other deleterious substances," so as to produce an article in imitation of natural butter.  The first and second counts of an indictment charged the defendant with having sold an article made in imitation of natural butter, not made from unadulterated milk or cream.  The third account charged defendant with selling an article made in imitation of natural butter " produced by compounding with, and adding to milk, cream and butter, certain acids and other deleterious substances, animal fats and animal oils not produced from milk or cream."  Defendant pleaded specially that the article sold by him was oleomargarine in an original package imported from another State, and stamped according to the Act of Congress and not opened on the premises of the defendant.  A demurrer to this plea was sustained and subsequently evidence offered to prove the same facts was rejected.  *Held*,

1st.  That the defendant was entitled to show, if he could, that the article sold by him was pure oleomargarine imported from another State and sold in the original package, and that such sale is not unlawful.

2nd.  That since the State had offered evidence tending to prove the allegations of the indictment, the burden was on the defendant to show not only that the oleomargarine sold by him was sold in the original package imported from another State, but also that it was unadulterated and free from acids and other deleterious substances, and that the plea was defective since it did not answer the allegation of impurity in the indictment, and that the evidence offered was properly excluded for the same reason.

When a special plea to an indictment has been filed and a demurrer thereto sustained, and evidence is afterwards offered and rejected, to prove the facts set forth in the special plea, an appeal from the judgment brings up for review the rulings upon the demurrer and upon the evidence.

A plea which does not answer the whole indictment or all of the counts to which it is pleaded, is defective.

Appeal from the Criminal Court of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before MCSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*Edgar H. Gans* and *T. C. Ruddell*, for the appellant.

*George R. Gaither, Jr., Attorney-General*, and *Henry Duffy, State's Attorney for Baltimore City*, for the appellee.

FOWLER, J., delivered the opinion of the Court.

The traverser was indicted in the Criminal Court of Baltimore City for selling oleomargarine contrary to law. There are three counts in the indictment. The first charges the sale of "a certain article in imitation and semblance of natural butter produced from unadulterated milk and cream of the same, the said article then and there being rendered and manufactured out of animal fats and animal and vegetable oils not produced from unadulterated milk or cream from the same." The second count alleges that the traverser kept for sale and offered for sale the article or substance described in the first count. And the third is based upon the allegation of unlawfully keeping and offering for sale ten pounds of a certain compound in imitation of natural butter, produced by compounding with and adding to milk, cream and butter "certain acids and other deleterious substances, animal fats and animal oils not produced from milk or cream." To this indictment the traverser pleaded a special plea. It was pleaded to each of the three counts and therefore to the whole of the indictment. The State demurred, and its demurrer was sustained. The traverser pleaded the general issue, and having been tried before a jury on all three counts of the indictment, a general verdict of guilty was found, and the traverser was adjudged to pay a fine of one hundred dollars and costs.

After introducing evidence in support of the allegations of the indictment, the State rested, and the traverser offered to prove the facts which he pleaded in his special plea. These facts, so far as it is necessary to rehearse them for the purposes of the present discussion, are as follows : That the oleomargarine, the subject of the sale charged in the indictment, was shipped from Chicago by William J. Moxley, a citizen of Illinois, to his agent, the traverser, in Baltimore, in a package separate and apart from all other packages, being a ten-pound package, packed, sealed, marked, stamped and branded according to the Act of Congress of August 2nd, 1886 ; that this package was an original package which was

sold by the traverser at his place of business in the city of
Baltimore to the purchaser; that said package was not
broken or opened on said premises of the traverser; that
the said oleomargarine was an article in imitation and sem-
blance of natural butter, the said article having been manu-
factured out of animal fats and animal and vegetable oils;
* * * but the fact that the article was not butter was
made known by the traverser to the purchaser, and there
was no attempt or purpose of the traverser to sell the
article as butter, and that said oleomargarine is recognized
by said Act of Congress of August 2nd, 1886, as an article
of commerce. Upon the objection of the State this evidence
was ruled out and the traverser excepted, and has appealed.
Upon this appeal both the ruling upon the demurrer and on
the evidence are open for review. *Act of 1892*, ch. 506;
*Avirett* v. *State*, 76 Md. 576; *State* v. *Floto*, 81 Md. 500.

The same question, however, is presented by both branches
of the case, and that is, so far as the first and second
counts of the indictment are concerned, whether the pro-
hibition contained in section 89 of Art. 27 of the Code
against the sale of any article made " in imitation or sem-
blance of natural butter " is a valid exercise of legislative
power, when applied to the sale here of oleomargarine in
the original package manufactured in another State. We
will presently consider the third count of the indictment.

1. First, then, the question as it is presented by the ruling
upon the testimony. It is conceded by the State, and it is
apparent from the counts of the indictment we are now con-
sidering, that they are based upon the first part of section 89
of Art. 27, known as the oleomargarine law of this State.
This and other sections of our Code prohibiting the sale and
manufacture of oleomargarine have been several times be-
fore this Court for construction, and their validity has been
again and again upheld, so far as they prohibit the manu-
facture of oleomargarine within this State, and the sale with-
in this State of oleomargarine manufactured herein. *Wright*
v. *The State*, decided at November term, 1898, 88 Md. 436;

*McAllister* v. *State*, 72 Md. 390; *Pierce* v. *State*, 63 Md. 592. But now for the first time we are required to decide whether these provisions of our statute prohibiting the sale of an article made in imitation and semblance of natural butter are valid as applied to such an article made in another State and offered for sale here in the original package? On the part of the State it is contended that these provisions of our statute are valid as prohibitions of the sale of oleomargarine made in imitation and semblance of natural butter, whether such article be made in or outside of this State, and the case of *Plumley* v. *Mass.*, 155 U. S. 462, and *Powell's case*, 127 U. S. 685, are relied upon to sustain this position. On the other hand the traverser contends that the decision of the case now before us is controlled by the more recent case of *Schollenberger* v. *Penn*, 171 U. S. 1; and that our statute is void under the commerce clause of the Constitution of the United States, so far as it attempts to prevent the introduction and prohibit the sale within this State of oleomargarine in the original package. It will, therefore, be necessary to examine the cases relied on by the State and the traverser respectively to ascertain how far they are applicable to the questions here presented. For, whatever our own views may be, we must, when, as we are here, confronted with a Federal question, be governed by the decisions of that tribunal, which, by the Constitution of the United States, is made the Court of last resort in the determination of questions arising under its provisions. It is sufficient to say in regard to *Plumley's case*, as well as *Powell's case*, that in neither of them did the question here presented arise. "The *Powell case*," says JUSTICE PECKHAM, in delivering the opinion of the Court in *Schollenberger's case, supra*, " did not and could not involve the rights of an importer under the commerce clause. The right of a State to enact laws in relation to the administration of its internal affairs is one thing, and the right of a State to prevent the introduction within its limits of an article of commerce is another and a totally different thing. Legislation which has its effect

wholly within the State, and upon products manufactured and sold therein, might be held valid as not in violation of any provision of the Federal Constitution, when, at the same time, legislation directed towards prohibiting the importation within the State of the same article manufactured outside its limits might be regarded as illegal, because in violation of the rights of citizens of other States arising under the commerce clause of that instrument." And after an elaborate examination of the *Plumley case, supra*, the same learned Judge continues : " It will thus be seen that the case (of Plumley) was based entirely upon the theory of the right of a State to prevent deception and fraud in the sale of any article, and that it was fraud and deception contained in selling the article for what it was not, and in selling it so that it should appear to be another and a different article, that this right of the State was upheld."  " The question," he continues, " of the right to totally prohibit the introduction from another State of the pure article did not arise, and of course was not passed upon." Much has been, and doubtless more will be said in reference to the alleged conflict between the *Schollenberger case* and the other cases to which we have just referred. But whether such conflict be real or only apparent it is clear that in the *Schollenberger case* the Supreme Court has reiterated in emphatic terms what has been so often declared by that Court, that no State Legislature can validly prohibit the importation and sale within the State of a pure article of commerce, so long as it remains in the original package.

2. The question then arises whether the article which is charged in the first and second counts of the indictment to have been unlawfully sold and kept for sale by the traverser is an article of commerce, as defined by the Supreme Court of the United States. Since the decision of *Schollenberger's case* there can be no doubt as to the result of this inquiry, if we are to be bound by the views expressed in that case.  The Act of Congress of Aug. 2, 1886, 24 Stat. 209, sec. 2, defines oleomargarine as an article " made in imita-

tion and semblance of butter." These are the very words used in our statute to describe and define the article the sale of which is thereby (absolutely) prohibited. After a full discussion of the effect of the Act of Congress, and having given the history of the origin and of the manufacture of oleomargarine, the article "made in imitation and semblance of butter," the Court declares: "Upon all these facts we think it apparent that oleomargarine has become a proper subject of commerce among the States and with foreign nations." This being so, it is not within the power of the State to prohibit the importation and sale here of oleomargarine made in imitation and semblance of butter, because such legislation would be a clear violation of the commerce clause of the Constitution of the United States so far as it regulates interstate commerce."

But it must not be forgotten that the State may pass all laws necessary to prevent deception and fraud in the sale, within its limits, of articles in whatever State manufactured or from whatever State imported or introduced. This right is recognized by all the authorities and by no decision more fully than by the Supreme Court of the United States in the *Schollenberger case*, to which we have so frequently referred. From what we have said it follows that when the traverser offered to show by the evidence which was excluded, that the oleomargarine was made in the State of Illinois, that it was shipped thence to him in the city of Baltimore, and was sold by him and offered for sale only in the original package in which it was imported from the place of its manufacture, he should have been allowed to do so, because our statute must not be so construed as to be in direct conflict with the Constitution of the United States, if a construction in harmony with it be possible. If, therefore, as we are bound to do, such a construction being not only possible but reasonable, we construe the prohibitory provisions of our statute, to which we have referred, so as to limit them to oleomargarine made in this State, and sold or offered for sale here, they will be

free from objection.   And the statute itself being in this respect valid, the first and second counts of the indictment based on it must be held good.   In the case of *Dickhaut* v. *State*, 85 Md. 464, we held the statute there under consideration must be construed to relate to game killed in this State, although the terms were general, and could have applied as well to game killed outside the State.   And this construction was adopted because we considered it a reasonable one.   In the same case the indictment was held good upon demurrer, although the traverser was charged with having in his possession game, there being no allegation whether it was killed within or outside of the State. But we held, according to the well-settled rule, that it was sufficient if the statutory offence should be described in the indictment in the words of the statute itself.   In the case now before us, as in that, after the State had offered evidence tending to sustain the allegations of the indictment, it was the right of the traverser to show if he could, that the article he was charged with unlawfully selling was not embraced within the terms of the statute.   But, as we have seen, this he was not allowed to do.

3.  The third count, however, is based upon another part of the same section.   This count charges that the traverser kept and offered for sale oleomargarine, produced by mixing with milk certain acids and other deleterious substances and animal fats and animal and vegetable oils.   It is clear from all the authorities that this portion of Section 89, Art. 27 of the Code, on. which this count is framed, is valid, not only as respects oleomargarine made contrary to its provisions in this State, but it extends to and includes all oleomargarine so made anywhere.   For the execution of its police power the States have the right to pass such laws as may be necessary and proper to prevent fraud and deception in the sale of any commodity, although it be an article of commerce, and whether made within or without, and imported within the State for sale in original packages or otherwise.   The testimony, therefore,

consisting of the same facts set out in the special plea, and hereinbefore rehearsed, does not answer the allegation of the third count of the indictment. That allegation is that the traverser kept and offered for sale impure and deleterious oleomargarine made in part out of acids and other deleterious substances. He offered to prove that the oleomargarine in question was an article of commerce in semblance and imitation of natural butter, that it was manufactured in another State out of animal fats and vegetable oils, that it was not sold as butter, but as oleomargarine. But the proof, as offered, should have gone further. The State had offered testimony tending to prove the allegations of the indictment and the burden was upon the traverser to show, if he could, not only that the oleomargarine was an article of commerce, but that it was pure, unadulterated and free from " acids and other deleterious substances." The evidence offered, without being accompanied by that which was omitted, was entirely immaterial and irrelevant, because, as we have said, no one denies the right of the State to prohibit absolutely the sale or keeping for sale an impure or harmful article of food, whether made here or elsewhere, whether sold as butter or oleomargarine, or whether called an article of commerce or not. It follows, therefore, that the testimony offered was properly excluded.

4. We need say but little in regard to the question as presented by the demurrer. For the reasons already given, the facts set forth in the special plea would have afforded a good defence to the first and second counts if they had been properly pleaded. But the special plea was pleaded to each count, and therefore to the whole of each count, and to the whole of the indictment. But clearly, as we have already pointed out in discussing the question as presented by the exception to testimony, the facts set forth in the plea do not answer, as the plea professes to do, the whole indictment, nor even the whole of the third count. For this reason the plea is defective. *Poe Pl.*, sect. 664, note 3. But in addition to this objection, the plea amounts to

the general issue, and is bad for this reason also. *Ib.*, sec. 637, &c.

From what we have said it follows that the demurrer to the special plea was properly sustained. But there was error in refusing to allow the traverser, in answer to the first and second counts of the indictment, to prove the facts which he offered to prove. The State should have asked the Court to exclude the testimony under the third count, for, as we have seen, it was not admissible under the issue presented by that count. But if admissible for any purpose, as it was, it was error to exclude it altogether.

> *Judgment reversed and new trial awarded.*

(Decided June 20th, 1899).