## CHARLES E. McALLISTER *vs.* THE STATE OF MARYLAND.

*Constitutional Law—Right of Importer to Sell Oleomargarine in the Original Package—Imitation of Yellow Butter—Plea in Avoidance.*

Code, Art. 27, sec. 88, as amended by the Act of 1900, ch. 496, prohibits the sale, or the having in one's possession with intent to sell, within this State, oleomargarine, a compound of fats or oils, made in imitation of yellow butter produced from milk or cream. Under an indictment for violation of the statute the defendant pleaded, and offered to prove, that the oleomargarine which was in his possession was made in another State, and was retained by him in the original package unbroken in which it was shipped from that other State ; that it was a pure article of commerce as defined in the Act of Congress of August 2, 1886, and was colored in imitation of yellow butter, but that the defendant had not offered such oleomargarine for sale as butter. *Held,* that these facts constitute a good defense to the indictment, since, under the rulings of

the Supreme Court of the United States, it is not competent for a State to prohibit the sale of pure oleomargarine, shipped from another State, in the original package ; and it makes no difference that the oleomargarine was colored in imitation of yellow butter, unless it be alleged and proved that the coloring matter is impure and injurious to health.

A plea setting forth the above defense is not bad as amounting to the general issue but is good because it admits the facts set forth in the indictment and avoids their legal effect by alleging that the oleomargarine in defendant's possession, was an article of commerce as recognized by the Act of Congress ; that defendant possessed and offered it for sale in the original package in which it had been received from another State, and that defendant did not represent that it was butter.

Appeal from the Criminal Court of Baltimore (WICKES, J.).

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*Edgar H. Gans* and *W. Calvin Chestnut*, for the appellant.

This case is controlled by *Fox's case*, 89 Md. 386, the facts of the two being identical. The distinction between the *Plumley* and *Schollenberger cases* is found in the difference between the laws of the respective States in which the defendants, who sold oleomargarine, were convicted ; and that although the defendants apparently sold an article identical in kind and character in both cases, yet, by virtue of the Massachusetts law, the sale was illegal ; and by virtue of the Pennsylvania law, in force at the time, the sale was legal. From this the appellee seeks to deduce the proposition that as our present oleomargarine law is substantially similar to the Massachusetts law, under which Plumley was convicted, that therefore the Fox case in this State and the Schollenberger case are not applicable. This is not the real distinction between the cases. A critical examination of the two cases fails to show that they are based on any such distinction, although it is certainly true that the more liberal provisions of the Massachusetts law were used in argument in support of the decision in the Plumley case. We venture to submit that the real difference between the two cases lies in the point of view with which the majority judges in the two cases approached the

question with respect to the question·of *fact* concerning the
nature and· character of the article known as oleomargarine.
The real point before the Court in each case was—did the
right secured to the defendant by the Constitution of the
United States to import the article in question extend to the
point of allowing him to sell the same ? If the article in ques-
tion was an article of commerce, then clearly the defendant
had the right to import it into the State, as he would certainly
have had the right to transport it through the State, for this
was an act of commerce ; but if the article, though one of
commerce, was *impure* for any reason, then the right granted
by the defendant under the Constitution to import into or
transport through a State did not give him the right in oppo-
sition to the police regulation of the State to sell the same
within the State. Thus the question is seen to be not pri-
marily what was the law of the State, but the chief question
was—was or was not the article a *pure* article of commerce ?
If impure, there was no right of selling it if prohibited by the
State statute. Bearing this in mind, it is not difficult to under-
stand the apparently opposite conclusions reached by the
Supreme Court in the two cases. The real difference is that
in the opinion of the majority judges in the Plumley case the
oleomargarine in question was assumed to be *impure*, while in
the opinion of the minority judges in that case, and in that of
the majority judges in the Schollenberger case, the oleomar-
garine in question was assumed to be a pure article of com-
merce.

The question under discussion can be restated as follows :
It being conceded that the importer has a right to import and
sell a pure article of commerce in the original package, the
State law to the contrary notwithstanding, does the presence
of a harmless coloring matter in the article render it impure ?
The contention of the appellant on this point is that it does
not. The contention of the appellee is that it does.

The language of the special plea in describing the oleomar-
garine in this case is therefore substantially the same defini-
tion of oleomargarine as given by the Act of Congress. This

Act of Congress, in so defining oleomargarine, clearly recognizes that oleomargarine does contain a coloring matter. The coloring matter no more prevents the article from being a pure article of commerce than would the presence of an ingredient put in for the purpose of giving it a peculiar flavor or taste. For instance, Allegretti's chocolates contain no sugar, but the presence of sugar in nearly all other chocolates does not make them impure articles of commerce.

Again, it must be remembered that the article in the present case is exactly identical with the article in the *Fox case*, which was assumed by this Court to be a pure article of commerce. The oleomargarine in the *Fox case* was in imitation and semblance of butter, just as it is in this case. Now the resemblance of oleomargarine to butter consists both in taste and appearance. To the eye, of course, the color of the two articles is the principal point of resemblance. It seems to be thus clear that the presence of coloring matter in oleomargarine was not regarded in the *Fox case* as making it impure. Again, the whole argument on the part of the appellee that the presence of coloring matter in oleomargarine renders it impure, is based on the fact assumed by the appellee that the coloring matter is put in oleomargarine by the manufacturer with the *intent* to make the same look like butter, and thereby defraud the purchaser into buying oleomargarine for butter, a higher priced and more valuable article. This, we say, is a false assumption of fact. At the time of the decision in the *Plumley case* the Court apparently would not take judicial notice of what oleomargarine was, but since the *Schollenberger case* it is conclusively established that the Courts will take judicial notice of the nature and constituents of oleomargarine. In this case the definition given in the Act of Congress should be controlling with the Court, but if the Court desires to go further, it will readily be found that coloring matter is practically always in oleomargarine, and always has been there since the article began to be manufactured. It is not put there with the object of deceiving purchasers, although it is freely admitted that unscrupulous people may use the sim-

ilarity in result of the two articles to effect frauds. This,
however, is true of many other articles of merchandise. Our
laws of fraud and false pretenses are ample, if enforced, to
punish these frauds. The fact is, that the coloring is merely
put in to render the article more attractive to consumers, just
as exactly the same coloring matter is now almost universally
added to butter, not to make butter resemble oleomargarine
any more than oleomargarine is intended to resemble butter,
but to make butter more attractive to the consumer. (See
also the statement of facts in the case of *Collins* v. *N. H.*, 171
U. S. 32.) It is also a well-known fact that butter was not
to any great extent artificially colored until long after the use
of coloring matter in oleomargarine had been shown to be
entirely harmless and acceptable to the consumer.

The appellee further argues that as our law allows the sale
of oleomargarine in any color but *yellow*, that therefore the
sale of oleomargarine in the one prohibited color is clear evi-
dence of intentional fraud. This argument is readily met by
a fact of which this Court can and ought to take judicial no-
tice, that the public has become so accustomed to yellow oleo-
margarine that as a fact it will not buy oleomargarine of any
other color, and that for this reason, if it cannot be sold with
a yellow color, it will not be bought at all any more than at
the present day the ordinary consumer will buy a light-colored
butter, even in winter, when it is well known that all butter
not artificially colored is light in color. In *Collins* v. *New
Hampshire*, 171 U. S. 30, it has been decided that the per-
mission to sell oleomargarine only when colored pink is equiv-
alent to the prohibition of its sale. We submit that as oleo-
margarine can only be sold when yellow, the prohibition of
the sale of oleomargarine when yellow only, is just as much
a total prohibition in effect as the permission to sell it only
when pink. This is well stated in the *Collins case* as follows:
"Although under the wording of this statute the importer is
permitted to sell oleomargarine freely and to any extent, pro-
vided he colors it pink, yet the permission to sell when accom-
panied by the imposition of a condition, which, if complied

with, will effectually prevent any sale, amounts in law to a prohibition."

*John Phelps* (with whom were *Isidor Rayner, Attorney-General,* and *Robert M. McLane, State's Attorney,* on the brief), for the appellee.

*Two Classes of Oleomargarine Laws.*—(*A.*) *Prohibitive laws. Theory of total prohibition of oleomargarine as an inherently injurious article.* Oleomargarine being composed of acid and refuse fats, was originally thought necessarily dangerous to health—the old theory, and the one adopted by all Maryland laws until Act of 1900, and the old Pennsylvania law, as construed by cases relied on by appellant.

(*a.*) *As within the State* such law is a valid exercise of police power, where the object of the law is protection of health, the law on its face showing substantial relation to this object, and not an attempt to invade the constitutional rights by a colorable regulation ; the judgment of the Legislature as to injurious character of article being then one of public policy and not reviewable by Courts. *Powell* v. *Pennsylvania,* 127 U. S. 678; *Wright* v. *State,* 88 Md. 432; *McAllister* v. *State,* 72 Md. 390.

(*b.*) *As affecting interstate commerce.*—Where total prohibition, as inherently injurious, of an article recognized as a proper subject of interstate commerce ; judgment of the Legislature not conclusive. If it appears from evidence or (semble) from judicial notice (*Dissentiente,* Harlan, J., 171 U. S. 1; *Austin* v. *Tenn.,* 179 U. S. 343, 1901,) that the article may or may not be injuriously manufactured or imported, the law providing no method of distinguishing the good from the bad ; the Courts will review the policy of the Legislature, and will not allow the law to be applied to articles of interstate commerce in the original package. *Schollenberger* v. *Penna.,* 171 U. S. 1 (Oleomargarine); *Fox* v. *State,* 89 Md. 381 (Oleomargarine); *Austin* v. *Tenn.,* 179 U. S. 343 (Cigarettes); *Leisy* v. *Hardin,* 138 U. S. 313 (Beer); *Minn.* v *Barber,* 136 U. S. 313 (Fresh Meat); see *Collins* v. *New Hampshire,* 171 U. S.

(*B.*) *Regulative laws. Theory that oleomargarine colored yellow is a fraudulent imitation of butter.*   Later research has shown that, when properly made, oleomargarine is not necessarily injurious to health ; but that, as a substitute for butter produced from the dairy, it is a cheap article manufactured of fats, and to consumers generally less desirable.   Although, when in its uncolored state of almost pure white, and not colored to imitate butter, it may be sold with impunity, and bought and used by persons who desire it ; yet, when colored yellow to resemble natural butter (which ordinarily is, and by immemorial popular association, is always deemed to be naturally yellow), it cannot be distinguished from the genuine article by even the closest scrutiny of the consumer, or indeed, of experts, short of chemical analysis ; and therefore to allow traffic and sale in the colored oleomargarine, would be to subject the citizens of the State to constant injustice—the consumer to the perpetration of frauds, actual or potential, and a large agricultural industry to fraudulent and unfair competition.   Compare laws prohibiting infringement of trade marks and " unfair competition."   Such are the Massachusetts Acts held valid as to imported article in *Plumley* v. *Mass.*, 155 U. S. 461, the present Maryland law (Act of 1900, chap. 496, sec. 88), the new Pennsylvania law of 1899, *McCann* v. *Comm.*, (Pa.) 48 Atl. 470 (1901), and the laws in many other States all modeled more or less closely after the Massachusetts " color law."

(*a.*) *As within the State* such laws are valid.   *McAllister* v. *State*, 72 Md. 390, 392; *Pierce* v. *State*, 63 Md. 396.

(*b.*) *As affecting interstate commerce* are valid.   The object of such laws is to prevent fraud and false pretenses, and promote fair dealings ; and like all laws of that nature are within the sovereign power of State police regulation.   The Constitution of the United States, in giving Congress the power to regulate commerce between the States did not design to interfere with the police power of the States, nor to secure to any one the right to defraud a neighbor.   Nor does freedom of commerce demand recognition of a right to practice deception

on the public.   The real object of coloring oleomargarine yellow is to make it resemble genuine butter, to represent it as something which it is not and perpetrate a fraud upon the purchaser.

Although the Act of Congress of 1886 recognizes oleomargarine as a lawful article of commerce for purposes of taxation, that Act does not give Federal licensees right to violate State laws, nor does that Act purport to regulate interstate commerce.   And while a State cannot totally exclude an article recognized as a lawful subject of commerce, it may regulate its introduction so as to insure purity and prevent fraud. *Plumley* v. *Mass.*, 155 U. S. 461; *People* v. *Arensberg*, 105 N. Y. 123; *Fox* v. *State*, 89 Md. 387.

On the general proposition that by the " commerce clause " the States have not surrendered to the general Government the power to prevent fraud in the sales of personal property, see also: *R. R. Co.* v. *Husen*, 95 U. S. 465 ; *Minnesota* v. *Barber*, 136 U. S. 313 ; *Brimmer* v. *Rebman*, 138 U. S. 78 ; *Voight* v. *Wright*, 141 U. S. 62 ; *Walling* v. *People*, 116 U. S. 446.

Appellant proceeds on the supposition that *Schollenberger's case*, 171 U. S. 1, has overruled *Plumley case*, 155 U. S. 461. No such supposition is tenable when the cases are read together.   The Supreme Court in the latter case emphatically states that there is nothing inconsistent in the two cases and expressly quotes and re-affirms the earlier.   This Court has also recognized that fact.   *Fox* v. *State*, 89 Md. 381 ; *Rasch* v. *State*, 89 Md. 759.   The only case where the conclusion is distinctly reached that *Schollenberger's case* overrules *Plumley's case* is a *nisi prius* opinion of the District Court of Minnesota *Re Brundage*, 96 Fed. 963, which was distinctly repudiated by a later case in Missouri District after careful deliberation *Re Scheitlien*, 99 Fed. 272 (1900), and on appeal, the Supreme Court cited the *Plumley case* as authority, but deciding on another question that there was no jurisdiction : (*Re Brundage*, 184 U. S. ——). *Re Brundage* was a consideration of a prohibitive law and is practically in line with the *Schollenberger* and *Fox cases*.

The following cases, among others, recognized the *Plumley case* as not overruled: *Re Scheitlein*, 99 Fed. 272; *Com.* v. *Van Dyke*, 13 Pa. Supr. Ct. 481; *McCann* v. *Comm.*, (Pa.) 48 Atl. 470; *Austin* v. *State*, 101 Tenn. 569; *Austin* v. *Tenn.*, 179 U. S. 343; *Schollenberger case*, 171 U. S. 1; *Com.* v. *Mullen*, 176 Mass. 132.

The material charge in the indictment is that defendant (1, the act) had in possession with intent to sell within the State (2, the substance) a certain product described in language of the statute, (3, imitation) being in imitation and semblance of yellow butter, etc.

The pleas attempt to answer by avowing: (1) (*a.*) That the article was seized without permission. (*b.*) That it was not had in possession with intent to sell *as butter*. (2) That the article was "pure" oleomargarine of commerce. (1) (*a.*) Seizure *vel non* is immaterial; prohibited articles may be seized. *Deems* v. *M. C. C. of Balto.*, 80 Md. 173; *Police Board* v. *Wagner*, 93 Md. 182. The having with intent to sell is not traversed, and is therefore admitted.

(*b.*) The offense in sec. 88 is not having in possession *to sell as butter*, but having in possession to sell the imitating article even *as oleomargarine*. *State* v. *Rasch*, 89 Md. 759; *People* v. *Arensberg*, 105 N. Y. 123. Sale *as butter* covered by same Act, sec. 90.

(2.) "Pure" is used ambiguously in first count. It may mean "free from injurious ingredients," (as used in *Fox* v. *State; Rasch* v. *State; Schollenberger's case, supra,*) or it may mean "free from fraudulent coloration." Hence plea insufficient. In second plea it was evidently used in the first sense, since the imitative coloration is elsewhere admitted. Even under the old Maryland law such allegation would not have been sufficient, for the pleader must allege that it was an article of commerce "*pure, unadulterated and free from acids and other deleterious substances.*" *Fox* v. *State*, 89 Md. 389. Under the new law purity (*i. e.* freedom from deleterious substances) even when properly averred is not material when the substance is "in imitation and semblance of yellow butter, etc."

FOWLER, J., delivered the opinion of the Court.

The traverser, Charles E. McAllister, was indicted in the Criminal Court of Baltimore City for the violation of sec. 88 of Art. 27 of the Code as amended by the Act of 1900, ch. 496 (See *Supplement Code 1900, Art. 27, sec. 88, pg. 33.*) The indictment alleges that the traverser had in his possession with intent to sell within this State and did unlawfully sell to the person therein named, thirty pounds " of a certain article, product and compound made partly out of certain fats, oils and oleaginous substances and compounds thereof not produced directly and wholly from unadulterated milk or cream from the same, which said article, &c., was then and there in imitation and semblance of yellow butter produced from pure and unadulterated milk and cream from the same." To this indictment the traverser pleaded two special pleas, but we were informed at the hearing by his counsel that they would rely only upon the second. These two pleas are identical with the exception that the seventh paragraph of the second plea in addition to the facts set forth in the seventh paragraph of the first plea alleges that the oleomargarine in this case was not only a pure article of commerce of that name defined in the Act of Congress of Aug. 2, 1886 * * * * * but that " the said article was in imitation and semblance of *yellow butter* produced from pure unadultered milk and cream of the same."

To both of these pleas the State demurred. Following the decision of this Court in the case of *Fox* v. *State*, 89 Md. 381, the learned Judge below sustained the demurrer.

I. In the case just cited there were several counts in the indictment and the special plea there held bad, although substantially like the one we are now considering, was pleaded to the whole indictment and to each count thereof, and we held that it was bad because it did not, as it professed to do, answer the whole indictment, p. 389. We further said that " in addition to this objection the plea amounts to the general issue, and is bad for this reason also." Upon a more careful examination we are satisfied that while the plea in the *Fox*

*case*, 89 Md., was clearly liable to the first objection, and the demurrer to it was properly sustained, yet it is not open to the objection that it amounts to the general issue, for the reason that it did not deny, but admitted, the facts alleged in the indictment and avoided their legal effect by further alleging that the oleomargarine there in question was offered for sale in the *original package* and that it was *an article of commerce* recognized by the Act of Congress of Aug. 2, 1886. Thus the plea gives color to, and admits the facts alleged. It does not follow that the plea is bad because the facts thus set up in avoidance may be proved under the general issue. *Poe's Pl.*, sec. 641 ; *Keedy* v. *Long*, 71 Md. 388. In delivering the opinion of the Court in the case just cited the present Chief Judge said : " The general issue is a denial of the whole substance of the declaration and puts upon the plaintiff the necessity of establishing all the essential allegations in the *narr.* But a plea which gives express or implied color to the plaintiff's statement, admits that statement to be true—but makes defense by setting up new matter in avoidance, can never be said to amount to the general issue, for the obvious reason that *the element of denial is absent.*" The special plea in the case at bar is the same as that considered in *Fox* v. *State*, and it follows from what we have said that it is not liable to the objection, viz., that it amounts to the general issue—and hence the demurrer should have been overruled. While the question thus presented by the demurrer to the plea is not important in this case, because the facts set forth therein are contained in the traverser's offer of proof which is included in the bill of exceptions by which it appears the same question was presented as if he had been allowed to plead, yet counsel on both sides united in the request that we should pass upon the validity of the plea because, as a matter of practice, it is more convenient and consumes less time to set up defenses by special plea than to call witnesses or to try the case upon an agreed statement of facts.

II. We will now briefly consider the main question presented by the record.

The special pleas having been held bad by the learned Judge below, the traverser offered to prove under the general issue, the facts embodied in his special pleas but the State objected and its objection having been sustained, the verdict and judgment were against him. From this judgment the traverser has appealed.

The facts, or those which are material to be here stated, which were embodied in the special pleas, and set forth in the traverser's offer are as follows : The oleomargarine which was in the possession of the traverser was not manufactured in this State, but in Chicago, and was sent to the traverser in an *original package*, conforming in every respect to the Act of Congress of August 2nd, 1886, and was retained by him in said original package, unbroken, until it was seized and carried away from his premises by an agent of the Butter Dealers' Association of Baltimore. It further appears that the oleomargarine was a pure article of commerce as defined by the Act of Congress above mentioned, and that it was the product of certain fats, oils, &c., not produced wholly from milk or cream, and contained among other things a coloring matter known as "annotto ;" and that it was in imitation and semblance of yellow butter ; but said article was not kept in the possession of the traverser for sale as butter, or offered to any one for sale as butter, and the fact that said article was not butter was made known by traverser to said agent when he seized it and that said oleomargarine is recognized by said Act of Congress as an article of commerce.

The question therefore we have to decide is whether these facts constitute a good defense to the indictment which, as we have seen, charges the traverser with having in his possession for sale, and that he sold oleomargarine made "in imitation and semblance of yellow butter produced from pure and unadulterated milk or cream from the same."

The solution of this question must be found in the construction of the Act of 1900, ch. 496, (Art. 27, sec. 88, Supplement to Code 1900,)—which prohibits the sale or the having in possession with intent to sell within this State oleomar-

garine made in imitation or semblance of *yellow butter* pro-
duced from milk or cream and provided that the violation
thereof shall be a misdemeanor punishable by fine for the first
offense and by fine or by fine and imprisonment for the sec-
ond offense.

It is contended on the part of the traverser that under the
recent decision of the Supreme Court of the United States in
the *case of Schollenberger*, 171 U. S. 1, the section of the
Code here relied on by the State even as amended by the Act
of 1900, ch. 496, (sec. 89, Art. 27, Supplement Code), is void
in so far as it is construed to prohibit the having in possession
and sale in this State of oleomargarine in the original package
made in another State.    While it was urged with much vigor
and ability by Mr. John Phelps on the part of the State that
this case must be governed not by the *Schollenberger case*
which was applied by this Court in the case of *Fox* v. *State,
supra,* but by the case of *Plumley* v. *Mass.,* 155 U. S. 461.

We do not consider it necessary to repeat what we have
heretofore said in reference to the supposed conflict between
the decisions of the United States Supreme Court just re-
ferred to, but it is proper to say that in the *case of Fox* in 89
Md. we held that we were forced to declare that sec. 88 of
Art. 27, before it was amended by the Act of 1900, ch. 496,
was void as applied to oleomargarine made in another State
and sold in original packages in this State.    And we so held
because in our opinion the recent views of the Supreme Court
of the United States as expressed in the *Schollenberger case,*
had declared in emphatic terms "that no State Legislature can
validly prohibit the importation and sale within this State of
a pure article of commerce so long as it remains in the origi-
nal package."    We also held in the same case that oleomar-
garine is "an article of commerce" and that therefore "it is
not within the power of the State to prohibit the importation
and sale here of oleomargarine *made in imitation and sem-
blance of butter.*"    But the contention is that inasmuch as the
section which was thus construed in 89 Md. has been amended
by the Act of 1900, ch. 496, the views expressed in that case

(Fox's case), have no application to the case now before us. Let us compare the two sections, then, to ascertain what, if any, difference there is between them. The original section (sec. 88, Art. 27, Code Public General Laws, p. 489), prohibits the sale of oleomargarine made "in imitation or semblance of *natural butter*," * * *. The amended section here relied on (sec. 88 of Art. 27, p. 33, Supplement of Code 1900), provides that no one shall have in possession for sale or sell oleomargarine "which shall be in imitation or semblance of *yellow butter*, &c. * * * *." In our opinion there is no substantial difference between these two provisions. Natural butter, that is to say, butter made from cream taken from the milk of the cow may or may not be yellow, and hence yellow is not a necessary characteristic of natural butter any more than it is of oleomargarine. If we held in *Fox's case, supra*, that an Act prohibiting the sale in original packages of oleomargarine made in imitation of natural butter, is void, it would seem like giving some magical or undue effect to the word "yellow" to hold the amended section valid. It is sufficient, however, to say that there is no allegation that the article the traverser here is charged with selling is injurious to health or that it is impure, but simply that it is colored yellow to resemble yellow butter. But the Act of Congress itself which defines oleomargarine as an article of commerce describes it as an article made partly out of certain fats, oils, &c., not produced from milk or cream and "containing among other things a certain coloring matter known as 'annotto.'" To hold, therefore, that the oleomargarine sold in the original package by the traverser is colored yellow, that is to say colored by annotto he is guilty of a misdemeanor would be to hold directly the reverse of what we decided in *Fox case*, 89 Md., namely, that a pure article of commerce may be excluded by State legislation. In regard to *Plumley's case, supra*, relied on by the State to sustain the view that the *purity* of the article is not material when it is "in imitation of yellow butter" we need only say that the same Court which rendered that decision

said that it was based entirely upon the theory of the right of the State to prevent deception and fraud in the sale of any article, and that it was fraud and deception contained in selling the article for what it was not, and in selling it so that it should appear to be another and a different article "that the right of the State was upheld." As we have seen, however, there is not only no charge in this case that the article sold was impure or deleterious or that it was represented or attempted to be sold for butter, but on the contrary, the special plea alleged and the traverser offered to prove that it was a pure article of commerce as defined by the Act of Congress and made in imitation of yellow butter and that he did not offer it for sale as butter or for any thing other than it was. Under the *Schollenberger case* and our own decision in *Fox case*, 89 Md., no State law can be held validly to prohibit the sale in original packages of oleomargarine colored yellow in imitation of yellow butter unless it is alleged and proved that the coloring matter is impure and injurious to health—for otherwise it would follow that a pure article of commerce manufactured in another State could be excluded from sale in this State even in original packages. "We think," say the Supreme Court of the United States in *Schollenberger case* "that what Congress thus taxes and recognizes as a proper subject of commerce cannot be totally excluded from any particular State simply because the State may choose to decide that for the purpose of preventing the importation of an *impure* or adulterated article it will not permit the introduction of the pure and unadulterated article within its borders upon any terms whatever." It is apparent, that the section of our Code (sec. 88, Art. 27), we are considering as amended by the Act of 1900, ch. 496, by its very terms prohibits altogether the sale of the very article described in the Act of Congress, and therefore so far as it applies to sales in original packages of oleomargarine made in other States, it is void not only under *Schollenberger's case*, but also under our own decision in *Fox v. State*, 89 Md.

It must be admitted that the recognition of the right to sell in original packages oleomargarine colored in imitation of yel-

low butter, renders it easy for unscrupulous and fraudulent
dealers to cheat their customers by selling them oleomargar-
ine when they ask for and pay for yellow butter. But ample
provision is made for the punishment of such frauds, and the
Courts will not hesitate in proper cases to impose the penalty
provided by our law.

It follows that there was error in sustaining the demurrer to
traverser's *second* special plea, and also in excluding the evi-
dence set forth in his offer—and the judgment must be re-
versed.

*Judgment reversed without a new trial.*

(Decided January 16th, 1902.)