## BALTIMORE BELT RAILROAD COMPANY AND THE BALTIMORE & OHIO RAILROAD COMPANY *vs.* GEORGE WILLIAM SATTLER.

*Liability of Railway Company For Injury to Land Adjoining Mouth of Tunnel From Smoke and Gases—Evidence—Experts—Pleading.*

A railway company is liable for injury to property adjacent to the mouth of a tunnel caused by the smoke, cinders, gases and vibrations resulting from the operation of the road, when the company has not complied with a municipal ordinance providing certain safeguards against such damage to adjacent property.

The fact that a railway company is authorized by statute to construct and operate its road through an open cut between tunnels in a city does not exempt it from liability for special injury caused to the land adjoining the open cut from smoke, cinders, vapors and so forth; and the land owner cannot constitutionally be deprived of his right to recover damages for such consequential injury.

A railroad was constructed through a city under an ordinance which provided that it should be built in a tunnel at certain places and that between two designated points the company should establish a station, the train shed of which should cover all of the tracks and be provided with smoke escapes twenty-five feet above the level of the street. No station or shed was erected at this point, but the road there ran through an open cut between the two tunnels.   Plaintiff's property adjoined this open cut and in the operation of the road smoke and gases were drawn out of the tunnels and cast upon plaintiff's land, and he was also subjected to an unusual decree of vibration.   *Held,* that the plaintiff is entitled to recover damages for the consequential injuries so occasioned, although there has been no taking of his land, and although the railway was lawfully operated in pursuance of its charter and there was no proof of negligence in its mode of operation.

*Held*, further, that such action is not affected by Code, Art. 23, sec. 198, which provides that railroad companies shall not be responsible for injuries to cattle, etc., or for fires caused by their engines, if they prove that the injury complained of was not the result of negligence.

In said action,*held*, also that evidence is admissible to show that the defendant had not complied with the provisions of the municipal ordinance requiring it to erect a shed over the open cut provided with smoke escapes.

That an expert witness should not be allowed to testify that in his opinion the quantity of smoke, etc., thrown upon the plaintiff's land was increased by the existence of the tunnels. But since other witnesses had testified that the smoke is collected in the tunnels and forced into the open cut and thence upon plaintiff's land, the defendant was not injured by the evidence of the expert's opinion to the same effect.

That evidence as to the effect produced by the smoke, etc., upon other property than that of the plaintiff in the immediate neighborhood is admissible.

The testimony of experts is admissible to prove the fact that the smoke, vapors and vibrations from an open cut of a railway near a tunnel caused a dimmution in the value of the plaintiff's property adjoining the open cut. But expert testimony is not admissible to show the amount or extent of the damage so caused.

In an action against a railway company for special injury caused by smoke, etc., from an open cut, defendant's plea alleged that the injury complained of was the unavoidable result of the operation of the defendant's cars in an lawful manner. *Held*, that a demurrer to this plea does not admit that the acts which caused the injury were lawful.

A special plea in confession and avoidance is not bad on demurrer, although it states facts which are admissible in evidence under the general issue plea.

Appeal from the Court of Common Pleas (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BOYD and SCHMUCKER JJ.

*W. Irvine Cross* and *Duncan K. Brent*, for the appellant.

The cases of *B. & P. R. Co.* v. *Reaney*, 42 Md. 117; *Short* v. *Ry. Co.*, 50 Md. 73; *O'Brien* v. *Belt R. Co.*, 74 Md. 363; *Garrett* v. *Lake Roland R. Co.*, 79 Md. 277; *Lake Roland R. Co.* v. *Webster*, 81 Md. 529; *Poole* v. *Falls Road Co.*, 88 Md. 533, and *N. Y. R. Co.* v. *Jones*, 94 Md. 24, decide as follows :

*First.* That although damage may result from the execution

of work which is legally authorized, the doing of such work cannot be considered a nuisance.

*Second.* In cases like the present, where no part of the plaintiff's property is physically invaded, there is no "taking," although the plaintiff may suffer consequential injuries.

*Third.* That while municipal corporations are not liable for consequential injuries in certain cases, where there is no "taking," yet, in similar cases, the opposite is true of private persons or *quasi* public corporations.

We contend that these authorities—and more especially the *Reaney case*—do not lay down the rule that *in all cases* a person who has suffered *any damage* at the hands of a *quasi* public corporation can recover, irrespective of the question of negligence on the part of such corporation. We, however, do not wish to be understood as advancing the theory that a corporation is free from *all* liability for damage arising from *any* act which may be done in pursuance of legislative authority, or charter provisions, provided, of course, that in doing the act the corporation be guilty of no negligence. Our position, which we respectfully submit is supported by the Maryland authorities, is that there are some acts which a corporation may do in the exercise of its charter powers, or by direct legislative authority, the doing of which necessarily includes a certain amount of annoyance, or discomfort, for which the corporation will not be liable, provided it is guilty of no negligence.

The *Reaney case* is an illustration of corporate liability for damage arising from a lawful act, done under legal authority, and done without negligence. But, we submit, the *Reaney case* does not cover, nor was it intended to cover, a case like the one at bar. In the first place, that case involved the doctrine of lateral support, while this case has nothing to do with such doctrine; and the opinion in that case, referring to English decisions, deals with the time at which a man, whose house has sunk from his neighbor's digging, acquires a cause of action. Moreover, the damage in that case resulted from one separate and distinct act of locating the road, towit,

the digging of a tunnel, and the Court decided, and very properly, that it made no difference whether the tunnel was dug carefully, and under proper authority, if damage resulted. But, that is not the present case, and we respectfully submit that a different principle is to be applied where the only damage complained of arises from the usual, ordinary, and unavoidable discomforts which follow the running of a train. This distinction is clearly shown by the *Short case*, which followed the *Reaney case.*

If the plaintiff's contention was right, why was it necessary for the Legislature to pass the Act contained in Code, Art. 23, sec. 198 ? A man whose cattle are killed or whose house is burned down, has certainly been damaged, but the fact of such damage alone will not give him a cause of action. It is true that this section of the Code has been construed by this Court to cast upon the railroad company the burden of proving that it is guilty of no negligence, but the decisions uniformly maintain that if the railroad company does successfully take up the burden of the proof, and shows that the damage complained of resulted without any negligence on its part, there can be no recovery.

We, therefore, submit that the law in Maryland, as shown by the above authorities, while it allows a recovery for damages which result from an act done under legislative authority, but which is essentially a direct invasion of property, does not sanction the recovery for mere annoyance and discomfort, which results through the incidental use of charter powers, and therefore in this case there can be no recovery for the usual and necessary discomforts which ordinarily follow the running of trains.

An examination of the authorities other than those of the State of Maryland will show that a diversity of opinion exists as to whether or not there should be recovery in a case like this. *Lewis on Eminent Domain*, sec. 151A, p. 372, lays down the rule that there is no good ground for distinguishing the nuisance which results from engine houses, repair shops, etc., and switch yards and side tracks, and that "when the

tracks and appurtenances of a railroad are so used and man aged as to be a *nuisance* to adjoining property, no part of which has been taken, the owner may recover the damage sustained, and it is no answer to say that the acts which create the *nuisance* may have been authorized by Legislature, since the Legislature cannot authorize the *taking* of property without compensation." The value of this authority in Maryland, we respectfully submit, seems rather questionable, in view of the fact that the Maryland doctrine is that the kind of act, which causes the annoyance in this case, cannot be regarded as a nuisance, or amount to a "taking" of property. If the learned writer means that there is no distinction between the annoyance which results from the appurtenances of a railroad, such as a repair shop, and the annoyance which results from the running of a train of cars, he disagrees with the leading case on the subject, which is *Baltimore and Potomac Railroad Company* v. *Fifth Baptist Church*, 108 U. S. 317. That was a case where a railroad company was held liable for practically rendering useless the occupation of a church, as a church, by reason of the location of its repair shops immediately against it. The Court, however, distinctly recognizes the difference sought to be established here, see p. 331:

Decisions of States whose Constitutions provide that compensation shall be made for property which is *taken or damaged* for public use, are not in real conflict with the decisions of States whose Constitutions limit compensation to property actually *taken ;* and so it is but natural to find that all cases which are decided in the above-mentioned States hold that a recovery should be allowed in a case like the one at bar, and all cases, which we have been able to find, that come from States whose Constitutions contain a similar provision to the one in Maryland, decide that, in a case like the present, there can be no recovery. If there is any case of the class last referred to which decides the other way, we have not seen it.

Having thus distinguished the line of cases originating in States whose constitutions prescribe compensation for property that is taken or damaged, we submit that the authorities are

in perfect accord with what we may call the Maryland rule. In *Beseman* v. *Pennsylvania Railroad Company*, in 50 N. J. L. 235, which was a suit for the same kind of damage as is sought to be recovered here, and in which is found a plea similar to the one involved in this case, the Court held that the railroad company was not liable on the theory of damage without proof of negligence. See also *Thompson* v. *Pennsylvanaia Railraad Company*, 51 N. J. L. 42; *Biedeman* v. *Atlantic City Railroad Company*, 19 Atlantic Rep. 731; *Costigan* v. *Railroad Company*, 54 N. J. L. 233; *Parrott* v. *R. Co.*, 10 Ohio St. 624; 116 Pa. St. 462; *Austin* v. *R. Co.*, 108 Ga. 687.

"The owners of a property in the vicinity of a railroad necessarily suffer inconveniences, such as detention by trains upon the track, the noise of passing trains, the smoke emitted from engines, and the like, for which they cannot recover in a suit for damages. *Dunsmore* v. *Central Iowa Railway Company*, 72 Iowa, 182; see also *Carroll* v. *Wisconsin Central Company*, 40 Minn. 168; *Railroad Company* v. *Garside*, 10 Kansas, 552; *Williams* v. *New York Central Railroad Company*, 18 Barb. 222.

"The noise and rumble of the trains, the smoke escaping from the engines and the jarring occasioned by the proper operation of the road, must be borne as *damnum absque injuria.* 1 *Wood on Railroads*, sec. 213. "That inconveniences not involving any immediate physical injury, such as smoke, vibration and noise, caused by passing trains, are not an independent ground for compensation." *Pierce on Railroads*, 217. See also *Elliott on Railroads*, sec. 718.

In view of the Maryland authorities and the forceable illustration provided by the section of the Code,which makes the *test* of a Railroad Company's responsibility for killing of cattle or for fires along its road, caused by the running of its trains, *the proof of negligence* on the part of the company, *and not the proof of damage* on the part of the plaintiff, the true rule in this state is, that a Railroad Company, notwithstanding charter privileges or legal authority, is responsible for any damage which results in the doing of an act which is a direct invasion

of private property, as for example, the digging a .tunnel or making of an embankment which causes a nearby house to fall down, and the fact that the Railroad Company had the proper legal authority to dig the tunnel or make the embankment would afford no answer for the damages to the house; but that a Railroad Company is not responsible for such annoyances, inconveniences or discomforts which incidentally and necessarily result from the operation of its trains in a lawful manner.

This Court has been in existence for a great number of years, and it is a noteworthy fact that during its long and honored career, this is the first time that it has been called upon to decide the question involved in this case, and yet from the time the first train was run in Maryland, damage similar to that claimed in this suit has been done to somebody. If the plaintiff's proposition is sustained, it is difficult to see how a railroad can be operated, for along all its right of way plaintiffs will arise and demand damages. Moreover, the right to recover against the railroad, if there is any such right, will not be bounded by the right of way, for a man living a half a mile or a mile from the track will be annoyed in just the same way, though to a less degree, as a man who lived adjoining the track, and so with the number of railroads which traverse this country, it will be difficult to find a spot where somebody is not in some way incommoded by some smoke, some noise or some dirt from passing trains. Nor will street cars be able to run in the streets of cities, for it is a matter of common knowledge that the passage of a street car is accompanied by a great deal of noise and dirt, which necessarily must be harmful to everybody who lives near the tracks. If the plaintiff's theory that the mere fact of damage will warrant a recovery, is correct, what will prevent a man who is walking near a passing train and who gets a cinder in his eye, which results in a great physical injury to him, from successfully maintaining a damage suit against the Railroad Company? This proposition, of course, is absurd, but we respectfully submit it is only the result of a logical application of the plaintiff's cause of action in

this suit. We therefore submit, both upon principle and authority, that the rulings of the lower Court on this question must be reversed.

There was a number of exceptions taken below to the Court's allowing plaintiff to put in testimony as to diminution in value. A number of these have special objections to them, and will be treated separately, but the large part of them can be grouped under two classes.

*First.* Those cases where the Court allowed expert testimony as to the fact that the smoke, vapors, vibrations, etc., from the Belt Railroad, caused a diminution in the value of the lot.

*Second.* Those in which the Court not only allowed witnesses to testify as experts that the smoke, vapor, vibrations, etc., caused damage, but to testify as experts the extent to which the said value was impaired.

Taking up the first class, defendant suggests that it is an extension of the use of expert testimony to call a witness to testify to the fact of damage. An expert on damage, as such, is something that neither law nor practical common sense can admit of. We do not think we are taking any narrow ground in this matter. It is perfectly well-recognized that some men from their occupation and the direction in which their attention has been drawn, are experts as to the value of properties. These were allowed to testify, and they certainly embraced the opportunity to the limit.

When it comes, however, to testify that property is diminished in value by special causes, these people cannot give any testimony that should be received by the Court.

Testimony that property has been injured in value amounts to a testimony that it has a value now, but would have a different value. This cannot amount to more than a pure speculation, or guess, and the introduction of it before a jury can have no effect but to confuse and mislead.

What the value of property is; what the value of property was; are matters that an expert may properly be called upon; but to testify that property has changed in value because of

an alleged tort is simply to assume the jury's place and to tell them what they ought to do.   The easy and fluent introduction of expert testimony on all subjects, has become a thing to be guarded against and treated with strictness.   It has introduced an element into jury trials that is exceedingly unfortunate.

We think that the present case is illustrated by some of the exceptions therein, which illustrates strongly the difficulty of drawing the proper line if once a loose principle is allowed as to expert testimony.

But while we think that the allowing of expert testimony as to damage is in itself erroneous, or an error, we think in this case there is a more distinct error in the second class of testimony that we have alluded to, and on which we have taken our sixteenth, seventeenth, twentieth, twenty-second, twenty-third, twenty-fourth and twenty-fifth exceptions.

In these the plaintiff was allowed to offer the testimony of experts, not simply to the fact that a certain action of defendant impaired the rental value of plaintiff's lot, but to give the exact extent of that damage.   This has been recognized as distinct error by the Courts.   See *Roberts* v. *R, R. Co.*, 128 N. Y. 455; *Pratt* v. *R. R. Co.*, 77 Hun. 139; *Thompson* v. *R. R. Co.*, 51 N. J. L. 42; *Yost et al.* v. *Conroy*, 92 Ind. 464; *R. R. Co.* v. *Fitzpatrick*, 10 Ind. 120; *R. R. Co.* v. *Gardner*, 45 O. St. 309; *R. R. Co.* v. *Campbell*, 4 Ohio St. 583; 2 *Wood on Railroads*, p. 1084, sec. 265.

*Alfred S. Niles* and *Oscar Wolff*, for the appellee.

1. If a railroad company does not conform to the city ordinance providing certain safeguards (against damage to adjoining property), it is not in the lawful pursuit of its business and is responsible for any injury which it may occasion, if the party injured be not at fault.

Except that the words bracketed are substituted for the words "in the use of its engines" the above is an exact copy of the syllabus in the case of *B. & O. R. R.* v. *State, use of Miller*, 29 Md. 252.

The opinion of the Court reads, "If the company had failed in regard to such requirement (*i. e.* of certain ordinances) it was then not in the lawful pursuit of its business, and not entitled to the consideration of the law whose injunctions it had disregarded." *P., W. & B. R. R. Co.* v. *Stebbing,* 62 Md. 504, 517.

2. The discharge of water, in large and unusual quantities, over the land of a plaintiff is a "direct damage, or taking, of property," for which an action will lie, even when the act causing the injury is done by a municipal corporation, in the exercise of such an undoubted right as the change of grades of streets, "and the plaintiff's right to recover does not at all depend upon the question as to whether the work was done negligently by the defendant." *Guest* v. *Church Hill,* 90 Md. 689; *Cahill* v. *Baltimore City,* 93 Md. 233, 238.

3. "There is no distinction between any of the cases whether it be smoke, smell, noise, vapor or water or any gas or fluid." *Adams* v. *Michael,* 28 Md. 123; *Fertilizer Co.* v. *Spangler,* 86 Md. 570; *Crump* v. *Lambert,* 15 W. R. 17.

4. In Maryland a railroad company does not stand upon the footing of a municipal corporation as to incidental damages done by its construction and operation, but upon the same footing as a private person, except that its lawful operations cannot be enjoined as a nuisance. In *Garrett* v. *Lake Roland Elevated Railroad Co.,* 79 Md. 277, "The immunity, which protects from liability governmental agencies in the proper and skillful performance of their public functions, does not extend to private persons or mere *quasi* public corporations; and, therefore, whilst in both instances the same distinction between an actual taking of private property and consequential injuries to it, when not taken, is applicable, a private person or a *quasi* public corporation is liable in damages to the individual incidentally injured, though the act complained of, and the occasioning of the injury, was in itself lawful." See *B. & P. R. R.* v. *Reaney,* 42 Md. 117; *O'Brien* v. *Balto. Belt Railroad Co.,* 74 Md. 363, 373; *Lake Roland Co.* v *Webster,* 81 Md. 525, 535; *N. Y., etc., R. R.* v. *Jones,* 94 Md. 30.

This is not the rule in all the other States. On the contrary, appellee concedes that the Courts of several States, notably Vermont, New Jersey and Minnesota, hold the opposite view.

But no one now has a fuller realization of the conflict of authority upon this point than this Court had when it laid down, and upheld, the Maryland doctrine. Particularly the Vermont decision, maintaining the doctrine of non-liability of railroad companies for consequential damages, has been urged upon this Court, only to be deliberately and expressly rejected as law in Maryland. *New York, etc., Co.* v. *Jones*, 94 Md. 37.

In Minnesota and, we think, in all the States holding the Vermont-Minnesota-New Jersey doctrine, it is held that the doctrine of non-liability on the part of the railroad company for injuries caused by smoke, &c., cast upon adjoining land, no part of which is actually taken, is consistent with the doctrine of liability for such damages *in futuro* to the balance of a lot, of which a part is condemned, which last-mentioned damages may be included in the award given in the condemnation proceedings. *Adams* v. *Chicago, &c., R. R. Co.*, 39 Minn. 289; *Lewis on Eminent Domain*, sec. 151A, 464.

This result seems to appellee to bring into strong relief the vice of the doctrine; for it seems to us to be equivalent to stating that such damages are a real taking of property, compensation for which can, under certain circumstances, be recovered, and under other circumstances cannot be recovered—certainly a *reductio ad absurdum*.

In New Jersey is found what perhaps is the leading case in favor of non-liability of railroad companies for damages incidental to their ordinary operation. *Beseman* v. *P. R. R.*, 50 N. J. L. 235. But in that case this result is held to follow from this argument: "The Legislature may authorize the altering of a grade of a city street. Such act may occasion enormous loss to the owners of the abutting property, and such loss is *damnum absque injuria*, the reason being that the improvement is a matter of public concern and that each individual member of the community, while he is entitled to its

benefits, must submit to its burdens.    The attitude of a rail-
road company, so far as it relates to the applicability of legal
principles, is not dissimilar."

This is the doctrine which has been considered by this
Court, passed upon and expressly overruled in *Garrett* v. *Lake
Raland Elevated Ry.*, 79 Md. 277; *B. & P. R. R. v. Reaney*,
42 Md. 117.

. Even in New Jersey the doctrine of the *Beseman case* seems
not altogether satisfactory.    In *Hughes* v. *Waverly, &c., R. R.
Co.*, 51 N. J. Eq. 350, the Chancellor, after citing this case as
now the law in New Jersey, and stating the rule by which he
considers himself bound, says: "It is perhaps difficult to le-
gally reconcile this rule, to the full extent to which its protec-
tion may be invoked, with the constitutional requirement that
private property shall not be taken for public use without com-
pensation.    *P. R. R.* v. *Angel*, 14 Stew. Eq. 316–330.

On the other hand, the Maryland rule is followed in other
Courts, *e. g.*, in *C. M., &c., R. Co.* v. *Darke*, 148 Ill. 228;
*Lewis on Eminent Domain*, secs. 151A; 152B.

The law undoubtedly is, that if a railroad company, exer-
cising the highest degree of care, runs over a trespassing cow,
or starts a fire where there was no reason to expect that result
from the operations of its trains, it is not liable for the con-
sequences.    But it is a far cry, from this doctrine, to the
other proposition that, when a railroad continually does acts
which amount to a nuisance, and permanently deteriorates
the value of adjacent property as the natural result of such
acts, it is not liable.

From *Short* v. *B. C. P. R. R. Co.*, 50 Md. 73, the counsel
for the defendant extracted the doctrine that the true test of
exemption from liability is whether "The owner has used his
property in a reasonable, usual and proper manner, taking
care to avoid unnecessary injury to others."    He then urged
that if a railroad company has a right of way and uses that
right of way for cars and engines, all of the best modern
construction and type, and all operated in a careful manner
that any smoke, noise, vibrations, vapors and other incon-

veniences, which necessarily result from the operation of its cars and engines in a lawful manner, are *damnum absque injuria.*

But we may say of this case (1) that its authority is greatly weakened by the vigorous dissenting opinion of CHIEF JUDGE ALVEY; (2) that the conclusion sought to be drawn by the defendants' counsel proves too much, for it amounts to this; "that no damage can be recovered when a corporation uses its franchise in a lawful manner," a conclusion which is distinctly repudiated in *B & P.* v. *Reaney*, 42 Md. 117; *Phillips* v. *W. M. R. R.*, 66 Md. 319; *O'Brien* v. *Balto. Belt R: R.*, 74 Md. 362–374; *Garrett* v. *Lake Roland El. Ry.*, 79 Md. 277; *Lake Roland Co.* v. *Webster*, 81 Md. 529; *Lake Roland Co.* v. *Hibernian Soc.*, 83 Md. 420; *N. Y. &c.*, *R. R. Co.* v. *Jones*, 94 Md. 24.

No argument based on plaintiff's interpretation of the Court's opinion in the Short case, can overrule all these decisions. The Short case must either be considered as having been overruled and JUDGE ALVEY's opinion now adopted as settled law in this State; or it must be so construed as to harmonize it with the other decisions, as it may well be by treating it as being decided upon the point that the jury held that the proximate cause of the injury was the act of God, viz: "That the damage suffered by the plaintiff was attributable either to the conformation of the ground and situation of his premises, or to a storm of such extraordinary severity that the usual drainage provided by the city would not clear the water off," facts of which the majority of the Court expressly held that there was sufficient evidence to go to the jury.

5. The general rule being applicable to railroads as before shown, no railroad can cause, or permit to pass over, or flow under neighboring lands smoke, smell, noise, vapors, water or any gas or fluid "in such a way as to materially interfere with the ordinary comfort of the occupier of the neighboring tenement, or so as to injure his property" without being liable in damages. *Adams* v. *Michael*, 38 Md. 123,

127, 128; *Crump* v. *Lambert,* 15 W. R. 417; *Walter* v. *Selfe,* 4 D. G. & S. 322; *St. Helen's Smelting Co.* v. *Tipping,* 11 H. of L. Cas. 642; *Dittman* v. *Repp,* 50 Md. 516; *Susquehanna Fertilizer Co.* v. *Malone,* 73 Md. 268; *Susquehanna Fertilizer Co.* v. *Spangler,* 86 Md. 562.

It is evident that in order to establish plaintiff's case, it is not necessary that each of the above mentioned five legal principles receive the sanction of this Court although we submit each of them with all confidence.

*What is necessary* to establish plaintiff's case is the approval by this Court of any one of the following propositions:

*First.* The plaintiff having given evidence that he has been seriously damaged by the defendant's operations he is entitled to recover from it to the same extent as if the damage were caused by a private individual; this being the approved rule, aud the rule established in Maryland.

*Second.* The plaintiff having given evidence that large and unusual quantities of smoke, gases, &c., are collected and discharged upon his land by the defendant, the defendant would be liable under Maryland law for injuries resulting therefrom, as for a "taking of property;" even though defendant's liability were put upon the same basis as that of a municipal corporation.

*Third.* The defendant could not, in this case, set up the defense that the damage done plaintiff was only incidental to the exercise by defendant of its charter rights, the evidence showing that the defendant was operating its road in violation of the provisions of the ordinance under which it was constructed.

A little more than eighteen months after the *narr.* was filed the general issue pleaded and issue joined ; after an additional plea was filed by leave of the Court, demurred to and the demurrer sustained ; after the defendants had asked and obtained leave to withdraw their pleas previously filed and enter a demurrer short to the *narr.* and had done so, which demurrer was overruled; the defendants for the first time file a plea of limitation, viz.

"That the tracks of the said defendant, the Baltimore Railroad Company, are laid upon the bed of Twenty-Sixth street, one of the streets of the city of Baltimore, under authority of the Mayor and City Council of said city, and that the said tracks had been completed at the place where said damage is alleged to have been caused more than two years before the filing of plaintiff's suit."

The acceptance of this plea was a matter either within the discretion of the Court, or else governed by its rules; and there are no rules set out in the record. In either case, therefore, no appeal would lie, for no appeal lies from the Court's action in a discretionary matter, and "in the absence of proof the presumption is that the proceedings had in the Court below were in conformity with its own rules." *Cherry* v. *Baker*, 17 Md. 75; *Kunkel* v. *Spooner*, 9 Md. 462. Furthermore, it appears that the tracks of said defendants were confessedly not laid upon the bed of Twenty-Sixth street at all, and consequently the rejection of this plea could have done them no injury, and no appeal will lie.

FOWLER, J., delivered the opinion of the Court.

This is an action to recover damages brought by George W. Sattler of Baltimore City against the Baltimore Belt and the Baltimore and Ohio Railroad Companies for alleged injury to his property caused by smoke and unwholesome vapors discharged by the engines which are run over the Belt Railroad and by the large amount of noise and vibration caused by such engines and the trains of the defendants.

The *narr.* alleges "that by reason of the said discharge of smoke and offensive and unwholesome vapors upon the plaintiff's land and by reason of the said noise and vibration as aforesaid, upon the plaintiff's said land, it is rendered far less desirable for dwelling or building purposes than it otherwise would be; the plaintiff is deprived of the profits and advantages that would reasonably enure to him from the development and improvement of his said property and the value thereof is seriously impaired. * * *."

The defendants pleaded the general issue. Subsequently they asked and obtained leave to file an additional plea. It alleges that the Belt Railroad Company in the execution of the powers conferred on it by its charter and by the Act of Assembly and by ordinance of the city of Baltimore has constructed its railroad in the manner and upon the route prescribed and said railroad is now being operated in the execution of the powers conferred on the Belt Railroad Company by its charter, the Act of Assembly and said ordinance; that the cars and engines operated over said road are all of the best modern type and are operated in a careful manner and that the noise, smoke, vapors and vibration and other inconveniences complained of by the defendant result from the operation of its cars and engines in a lawful manner, and that any damage caused the plaintiff by the operation of said railroad has been caused by the *necessary* and *unavoidable result of the operation of said cars and engines in a lawful manner.*

The plaintiff's demurrer to this plea was sustained, and the defendant withdrew their pleas previously filed and demurred to the *narr.* This demurrer was overruled, and the defendants filed a second additional plea which on motion of the plaintiff was not received, whereupon the defendants refiled the general issue pleas and its first additional plea, a demurrer to which last-named plea had already been sustained. It was again demurred to and the demurrer again sustained. During the course of the trial a large number of exceptions were taken to rulings upon the admissibility of evidence and one to the action of the Court upon the prayers. The judgment was in favor of the plaintiff and this is the defendants' appeal.

Before considering the questions that are presented by the record and relied on here it may be proper to say that we are not called on to discuss the ruling of the Court below on the defendants' demurrer to the *narr.,* nor that relating to the plaintiff's motion *ne recipiatur,* because the former is presented by the demurrer which was sustained to the additional plea, and all objection to the latter was abandoned at the hearing in this Court.

The first question presented arises upon the action of the lower Court in sustaining plaintiff's demurrer to the defendants' additional plea. The demurrer is based upon two grounds, first, that the plea amounts to the general issue, and second, that it asserts the legal proposition that the plaintiff is not entitled to recover damages for the injury alleged in the declaration, without proof of negligence. Counsel for both sides concur in saying that the second ground of this demurrer is the main and by far the most important question involved in this appeal. Whether, therefore, the plea is subject to the criticism that it amounts to the general issue and for that reason is defective, is quite immaterial for the main question, namely, whether the plaintiff can recover without alleging and proving negligence on the part of the defendants, is also presented by the demurrer to the *narr.* and by the ruling of the Court on the plaintiff's prayers. Briefly then in regard to the first ground of this demurrer. We do not think the plea is bad on the first ground relied on. Under the strict rules of pleading the defendants have a right, if they so elect, to plead specially, defenses in confession and avoidance which would be admissible in evidence under the general issue; and the fact that they are so admissible does not make the plea bad. *Poe's Pl.*, sec. 641; *DeLauder* v. *Baltimore Co.*, 94 Md. 7. Thus in this plea the defendant says substantially, "Yes, I confess that there is smoke and there are the other things complained of by the plaintiff, but they all necessarily result from the operation of our cars, engines and road in a lawful manner." The plea, therefore, is a plea of confession and avoidance. *McAllister* v. *State*, 94 Md. 300; *Keedy* v. *Long*, 71 Md. 388. Before proceeding to discuss the main question presented by the demurrer, perhaps it would be desirable for the purpose of clearness to state the facts of the case more at large than we have already done.

It appears from the evidence that the plaintiff has for many years lived at 2619 North Charles street, Baltimore, and that he is the owner of the two lots of ground, the damage to which is the basis of this suit; that one of the lots is 100 feet front

on Charles street immediately south of the open cut of the
Baltimore Belt Railroad and running back 184 feet; that the
other lot fronts 50 feet on Charles street with the same depth
as the first-named lot; that between these two lots there is a
lot 50 feet front on Charles street with same depth as the
others just named, on which is situated the house in which
plaintiff resides but does not own; that the two lots first named,
damage to which is here claimed, are used as a garden and
contain shade trees, walks, fruit trees, flowers, &c.; that there
are two tracks in the open cut of the Baltimore Belt Railroad
immediately north of this property, over which tracks, a great
number of trains pass during the day and night; the tunnel
runs a little beyond the front yard of plaintiff's lot, to the north
and the smoke and the gas and the vibration are caused by
the trains. The plaintiff testified, as did other witnesses, that
as soon as the trains come out of the tunnel into the open cut
in front of his lots they draw the smoke out of the tunnel and
it is cast upon his property to such an extent that everything
is dirty and unpleasant; that the noise and vibration caused
by the trains are very unpleasant. There was also a mass of
testimony in regard to the injurious effects on the value of the
plaintiff's property caused by the injuries complained of, which
will be considered later, but the question now is whether, as-
suming the plaintiff's property was injured in the manner and
to the extent alleged in the *narr.* and admitted by the plea, he
can recover without showing negligence on the part of the de-
fendants.

(1) The case of *Short* v. *Baltimore City Passenger Railway
Co.*, 50 Md. 73, was much relied on by the defendants. There
it was held by the majority of this Court that the defendant
company was not liable without proof of negligence for dam-
age to plaintiff's house caused by obstructing the natural flow
of water in the street due to clearing snow from its tracks; and
JUDGE ROBINSON said in delivering the opinion of the Court
that the broad question was presented whether damages could
be recovered irrespective of the question of negligence on the
part of the railway company, and that the true test in actions

of that kind by which exemption from liability is to be determined is whether in *the act complained of* the owner has used his property in a reasonable, usual, and proper manner, taking care to avoid unnecessary injury to others.

It was upon *Short's case, supra,* and the provision of our Code, sec. 198, Art. 23, that the defendants based their contention that there can be no recovery in this case without proof of defendant's negligence. The section of the Code just referred to provides that railroad companies shall be responsible for damage resulting in the killing of cattle, &c., or by fire from their engines, unless they "can prove   *   *   *   that the injury complained of was committed without any negligence."

Undoubtedly if the rule laid down in *Short's case* is applicable in all its breadth to this, the defendant's contention needs little more to sustain it, so far as Maryland authority is concerned, for that case declares that if the act there complained of was lawful and that if the defendant used its property in a reasonable, usual and proper manner taking care to avoid unnecessary injury to others no recovery can be had even though damage should follow such use. The plea, the demurrer to which we are considering, alleges that the injuries here complained of are only such as necessarily and unavoidably result from the operation of the road lawfully.

Let us, therefore, in the first place, examine *Short's case* in order to see what is the full scope of the rule there laid down by the majority of the Court and the grounds upon which it is based; and then secondly to ascertain whether the provisions of the Code just referred to have any bearing upon the questions raised by this demurrer.

What are the facts of the *Short case?* On the 6th January, 1877, there was a heavy fall of snow, and in clearing its track, the Baltimore City Passenger Railway Company threw the snow off towards the curb and thereby, as it was alleged, obstructed the natural flow of the water at the corner of Gay and Hoffman streets. A very heavy rain "one of unusual severity" followed the snow and the plaintiff's house was flooded with

water.   He asked the Court to instruct the jury that if they
should find that the Railroad Company obstructed the nat-
ural flow of the water on the street and by reason of such ob-
struction plaintiff's house was flooded, he was entitled to re-
cover.   This prayer was modified by the Court below to the
effect that if the defendant company exercised ordinary care in
removing the snow from its track and that the damage was
attributable either to the conformation of the ground and the
situation of the injured premises, or to a storm of such extra-
ordinary severity that the usual drainage provided by the city
would not carry the water off, then their verdict should be for
the defendant.   This prayer as modified was granted.   And
in the opinion of the Court, the conclusion arrived at, is placed
upon two grounds, first, that the defendant in the act com-
plained of was as matter of law using its property "in a reason-
able, usual and proper manner;" and second, that if, as matter
of fact, the damage was attributable to the conformation of the
ground or to a storm of extraordinary and unusual severity
the plaintiff could not recover.   So that what was decided as
matter of law in *Short's case* was this and no more, that *the
act complained of* in that case was authorized by the charter of
the defendant and the ordinances of the city of Baltimore, and
that, therefore, "the throwing of the snow on the bed of the
street was using the street in a usual, reasonable and proper
manner;" and that the plaintiff could not recover unless the
defendant was guilty of negligence.   Without intending to
question the decision in *Short's case*, so far as applicable to the
facts of that case, we do not think it affords the defendant any
justification in asking us to sustain its plea in the case now be-
fore us.   What is that plea?   We have already recited its
substantial allegations.   It is sufficient now to recall that it
alleges that all the injurious acts complained of in plaintiff's
declaration are only such as necessarily result from the opera-
tion of defendants road and the running of its cars and engines.
While the demurrer, of course, admits all matters of fact well
pleaded, it does not admit matters of law, and hence the question
whether the acts complained of in the declaration and admitted

by the plea are authorized and justified by defendants' charter and the city ordinances must ultimately be decided by the Court and not by the jury. Whether, therefore, the defendants in the construction of the tunnel and in the operation of their road and the running of their engines and cars were acting in a lawful manner depends upon their charter and the ordinances of the city of Baltimore passed in pursuance thereof. By its charter it was authorized to build its road for the most part through a tunnel through the city of Baltimore with the consent and upon the conditions prescribed by the ordinances of the city.

By Ordinance 83, sec. 5, certain provisions were enacted providing how the tunnel should be ventilated, in addition to the ventilation afforded by the mouths thereof, and by sec. 14 of the same ordinance it was declared that the provisions of said ordinance shall be deemed conditions of the consent of the municipal authorities to the passage of said road through the city of Baltimore, and as prescribing the manner, terms and conditions upon which the streets, &c., or ground of any kind in said city may be used by said Railroad Company. This ordinance was approved May 14th, 1890.

Ordinance 84 approved on the same day provided that in the open cut immediately north of the plaintiff's lot should be established a station, the train sheds of which shall, however, be so constructed as to cover the whole of the railroad tracks and platform in said cut, and to be provided with smoke escapes, the tops of which shall be not less than 25 feet above the level of Charles street. It is further provided that the provisions of this ordinance shall be construed to all intents and purposes as though they had been inserted in Ordinance 83, and hence the compliance with the provisions of this ordinance requiring the covering of the open cut from which the *narr.* alleges and the plea admits all the damage complained of arises, is expressly made a condition to the consent of the municipal authorities to the passage of the railroad through the city.

Now the *narr.* alleges and the plea admits that the plain-

tiff's property was damaged by the smoke, noise, vapor, &c., which was caused by the running of the defendants' trains. The plea also alleges that all this injury was the unavoidable result of the operation of defendants' cars in a lawful manner. Of course this last allegation is not admitted by the demurrer, because matters of law never are so admitted. Therefore the demurrer does not admit that the acts which produced the injury were lawful. The charter and Ordinance 83 referred to in the plea do undoubtedly authorize the defendants to run trains through the tunnel, and therefore it could lawfully do so, but surely it cannot follow that because the defendants allege they did this lawful act in a lawful manner, it necessarily follows they did so. Whether they did or did not is a question of law for the Court to decide. In the face of the allegations of injury to plaintiff's property, all of which are conceded, can we say that the defendants acted in a lawful manner? No one, neither private individual nor a corporation, has the right in the use of his property to injure his neighbor. as it is conceded the plaintiff is injured by the acts complained of. Such injuries are neither in fact nor law only such as necessarily follow the lawful use of chartered privileges. Not so in fact because we all know from observation and experience that such lawful use does not produce the result alleged, and if it did it would be impossible to reside in close proximity to railroads; and not so in law, because it is the law everywhere that everyone shall so use his own property as not to injure his neighbor. But not only so, we have frequently held that where a trade or business is carried on in such a manner as to interfere with the reasonable and comfortable enjoyment by another of his property, or which occasions *material injury* to the property itself, a wrong is done to a neighboring owner for which an action will lie. And this too without regard to the locality where such business is carried on; and although the business may be a lawful business and one useful to the public, and although the best and most approved appliances and methods may be used in the conduct and management of the business. *Susquehanna Fertilizer Co.*

v. *Malone*, 73 Md. 268; *Same* v. *Spangler*, 86 Md. 562. This
rule applies to individuals and corporations alike.

From what we have said it will appear that while the Court
held in *Short's case* that in the act there complained of the
defendant company in view of their charter and the ordinance
of the city used the street in a reasonable and proper manner,
and that if there was no negligence, no recovery could be had,
we are of opinion that in this case while the defendants had
the right to run their trains they had no right given them by
their charter or otherwise to operate them in such a manner
as to injure the plaintiff's property to the extent it is conceded
it was injured.

It will be observed that the plea is based upon and refers
only to its charter and Ordinance 83 of 1889–1890 as justify-
ing its acts and making them lawful, No reference whatever
is made to the later Ordinance No. 84 of 1890 nor to No. 81
of 1901 and both of which it was agreed should be and were
offered in evidence, and by the first of which the defendants
were required to build certain sheds with smoke escapes and
by the second of which they were relieved of that duty upon
certain conditions.

If then, as we have said, the injuries to the plaintiff's prop-
erty were such as alleged and admitted, it would be impossi-
ble for the defendants to successfully seek protection under
their charter, the Acts of Assembly or the city ordinances.
In *Cogswell* v. *N. Y., &c., R. Rd.*, 103 N. Y. 10, it was held
that the statutory sanction which will justify an injury to pri-
vate property by a railroad corporation and without the con-
sent of the owner must be express or given by clear and un-
questionable implication from the powers expressly conferred,
so that it can be said that the Legislature contemplated the
doing of the *very act* which occasioned the injury." If it be
assumed, however, that the Legislature of Maryland intended
to confer power upon the defendants not only to use the open
cut and tunnel, but also to use them in such a way as is
alleged and admitted *i. e.* to the serious injury of the plain-
tiff and his great discomfort and at the same time deprive him

of all remedy, such legislation would we think, clearly be invalid.    Thus in the case of *Stevens* v. *Canal*, 12 Mass. 466, it was held that if in such a case, where private property is taken by authority of the Legislature without affording at the same time means of relief and indemnification the owner of the property would undoubtedly have his action for damages at common law against those who should cause the injury.    For although it might be lawful to do what the Legislature should authorize, yet to enforce the principles of the Constitution for the security of private property, it might be necessary to consider such legislation as inoperative, so far as it trenched upon the rights of individuals.    This decision announces only well-settled law.    *Pumpelly* v. *Green Bay*, 13 Wallace, 166.

2. But if it could be assumed that the Legislature and City of Baltimore intended to and did give the defendants the right to do the *very acts* which resulted in such serious damage, then under the well-settled rule laid down in the *Reaney case*, 42 Md. 117, the fact that the acts were lawful and free from negligence would not protect the defendants if damage follows.    We might say here as was said in the case just cited, "In this case the jury have found that the property of the plaintiff has been damaged to the extent of $3,000, and it would be a reproach to the law if the Courts were required to determine that it was a case of *damnum absque injuria* and that there was no redress for such a wrong."

Of course it may be conceded that if the damage which resulted was only that incidental inconvenience which unavoidably follows the exercise of charter powers we might say as was said in *B. & P. R. R. Co.* v. *Baptist Church*, 108 U. S. 317, that such damage is without remedy and that "the private inconvenience in such case must be suffered for the public accommodation."    But we have already said that in our opinion the damages and injuries here alleged and admitted are not of such a character.

But again, if in view of our decisions it could be said that the injuries to the plaintiff's property do not amount to an actual invasion, does that fact exculpate the defendants?    It is

argued that the lawful act done in the *Reaney case* for which there was a recovery resulted in an actual invasion, and that hence that case has no application here.   But there are a number of other cases in which it has been held that a recovery may be had for consequential injuries caused by a lawful act even when there is "no taking."   So that an action lies in both cases.   *Garrett's case*, 79 Md. 277; *Reaney's case*, 42 Md. 117; *Lake Roland R. Co.* v. *Webster*, 81 Md. 529, and other cases not necessary to cite.   Why there should be any difference made in the right to recover if there is an actual invasion, and when the damage is only consequential, it is difficult to understand, for the damage, loss, inconvenience and discomfort to the owner may be as great in one case as in the other.   In *Guest* v. *Church Hill*, 90 Md. 689, we held that the overflowing of the land of an individual with water is *an invasion* thereof; and the fact that smoke, noise and vapor caused the injury here can make no difference, certainly none in the right to recover.   *Adams* v. *Michael*, 38 Md. 123, and *Fertilizer Co.* v. *Spangler*, 86 Md. 562.

We will not stop to discuss the conflict of authority upon this question.   In some of the text-books as well as in the decisions of some of the Courts of last resort a contrary view is held; but in the recent case of *N. Y., &c., R. W. Co.* v. *Jones*, 94 Md. 37, JUDGE PEARCE in delivering the opinion of this Court said that the case of *Hatch* v. *Vermont Cent. R. R. Co.*, 25 Vt. 50, opinion by JUDGE REDFIELD, in which it was held that railroad companies are not liable for necessary *consequential damages* accruing to premises not taken, could not be approved.   So that we may say that the law is settled in the State by a number of cases that damages may be recovered whether they result from direct invasion or from consequential injuries.

3. We do not perceive what application the provisions of Art. 23, sec. 198, Code, have to this question. It is there provided that if railroad companies injure any stock, as cattle, horses, &c., or if injury is occasioned by fire from their engines * * * unless the said company can prove to the satisfac-

tion of   *   *   *   the tribunal before which the suit may be tried, that the injury complained of was committed without negligence on the part of the company or its agents, they shall be responsible for such injuries.   Upon its face this statute changes in the special cases mentioned, the recognized burden of proof.   Before it was passed, in order to recover for injuries to cattle, &c., as therein mentioned, the plaintiff could not maintain his suit unless he proved negligence.   Now, however, he may prove the injury and it becomes the duty of the defendant to prove that the injury was committed without any negligence.   But we are not to assume that this statute makes any other change either in the general law or in the rule regulating the burden of proof in any other respect.   The duties and liabilities of railroad corporations in relation to the owners of property along their roads remain the same in all other respects.   Hence if the defendants would have been liable before Code, Art. 23, sec. 198, was adopted for the injuries here complained of, it is liable now.   And if the defendants were liable as we have already said they were, irrespective of this provision of the Code, they still so continue.   We are of opinion that the demurrer was properly sustained.   What we have said also disposes of the questions raised by the exception to the ruling on the prayers.

4. This brings us to the exceptions relating to the rulings upon the testimony.

Defendants *sixth*, *seventh* and *tenth* exceptions were taken to the allowance of questions to be asked several witnesses for the purpose of showing defendants violation of the Ordinance No. 84 of 1889–1890, which was offered in evidence without objection.   This, it will be remembered, is the ordinance which required the defendants to cover the open space with a shed supplied with smoke escapes.   In the first place both of the witnesses to whom these questions were addressed were shown to be experts, and it seems to us that sufficient ground was laid in their preliminary examination to qualify them to testify as experts on the subject of the ventilation of tunnels.   We have held that the defendants plea was bad, and therefore the

case was properly tried on the evidence offered under the general issue plea.    In effect the defendants defense was as said in *N. Y., &c., R. R.* v. *Jones, supra*, nothing more than a denial of the right of the plaintiff to recover, and it was, therefore, proper for him to prove that the defendant had failed to comply with the requirements of the ordinance in question. The testimony involved in these exceptions (the 6th and 7th), related to this ordinance and the failure of the defendant to erect the required sheds and smoke escapes, and was, therefore, admissible.    The *ninth* exception was taken to the asking of one of the witnesses on re examination a question for the purpose of affording him an opportunity of explaining some of his answers given on cross-examination.    This, of course, was proper and legitimate.    The *eighth exception* was taken to the admission of certain testimony of Mr. Hook who testified as an expert on the ventilation and construction of tunnels. The testimony objected to was this.    That in his opinion the quantity of smoke cast on Mr. Sattler's land was increased by the existence of the tunnels in that neighborhood over what it would have been if there had been no tunnels there.    It does not appear to us that the fact proposed to be proved by this witness is such testimony as can be given by an expert.    The Court or any member of the jury knew quite as well as the witness that if the road ran all the way through an open cut the smoke would be distributed all along the whole distance and necessarily there could not be so much of it at any particular point.    The fact, however, that the smoke is collected in the tunnels and forced into the open cut and thence upon the plaintiff's land was testified to by the plaintiff and others, and hence the defendants were not injured by the proof of the witness's opinion to the same effect.

The thirteenth, fourteenth, twenty-sixth and twenty-ninth exceptions were taken to the admission of testimony as to the effects produced by the smoke, &c., in the immediate neighborhood on property other than the plaintiff's.

This testimony was admissible.    How better could the plaintiff establish his case?    If his property alone of all others sim-

ilarly situated was affected and if he alone of all those who lived near the open cut was made uncomfortable, the jury might well have said it was his fault and not that of the defendant. And the only way to show that others and their property were affected in the same way, though, perhaps in different degrees, was to show this condition by those who were personally acquainted with the situation. *Cooper* v. *Randall,* 59 Ill. 317; *Doyle* v. *M. R. Co.,* 128 N. Y. 495, 496.

Exceptions fifteenth, twenty-first, twenty-seventh, thirty-first, thirty-second, thirty-third rest upon the admission of expert testimony as to the *fact* that the smoke, vapors, vibrations, &c., caused a diminution in the value of the plaintiff's lots, and,

Exceptions sixteenth, seventeenth, nineteenth, twentieth, twenty-second, twenty-third, twenty-fourth and twenty-fifth are based upon the action of the Court in allowing expert testimony to show the *amount* or *extent* of the damage.

The general rule, of course, is that facts and not opinions must be given in evidence. Expert testimony is a well-known exception to this settled rule, and the question then is whether the testimony just referred to is included within the exception.

The rule in regard to the admissibility of expert testimony is well settled. In the case of *Stumore* v. *Shaw,* 68 Md. 19, it is thus stated by the late JUDGE MILLER who delivered the opinion of the Court. "There is a general concurrence of authority and decisions in support of the proposition that expert testimony is not admissible upon a question which the Court or jury can themselves decide upon the facts; or stated in other words, if the relation of facts and their probable results can be determined without special skill or study, the facts themselves must be given in evidence and the conclusions or inferences drawn by the jury." Again "where the question can be decided by such experience and knowledge as are ordinarily found in the common walks of life, the jury are competent to draw the proper inferences from the facts without hearing the opinions of witnesses." *Turnpike Co.* v. *Leonhardt,* 66 Md. 78. Without undertaking to lay down

any general rule, it appears to us that, certainly so far as the proof of the *fact* of damage is concerned there ought not to be any doubt. It can hardly be said that it requires either special knowledge or skill to enable a witness who has seen the property in question and has observed the effects of the alleged injurious acts to say whether the condition thereby produced is beneficial or otherwise. Strictly speaking, perhaps, no witness whether expert or not should be allowed to draw from the facts the conclusion that the property is damaged, for the jury are quite as competent to do that as the witness. But we believe the practice in this State has been otherwise, and witnesses who are acquainted with the property and have observed the effects of the alleged tort have been generally allowed after giving the facts to the jury to testify as to the fact of damage.

In regard to the other question, whether expert testimony is admissible to prove the exact amount of damage, there is a wide difference of opinion. In 2 *Lewis on Eminent Domain*, sec. 436, it is said that such testimony has been held admissible in the following States: Arkansas, California, Illinois, Maine, Massachusetts, Minnesota, Missouri, Oregon, Pennsylvania, Texas, West Virginia and Wisconsin, while the contrary has been held in Alabama, Georgia, Indiana, Iowa, Kansas, Nebraska, New Jersey, New York and Rhode Island.

It is not desirable to enlarge the limits within which expert testimony is admissible, and whenever the ultimate fact desired to be proved is, from the nature of the issue, especially confided to the jury, such evidence should be rigidly excluded.

The object for which the jury is sworn, that is to say if they find there is damage, is to find the extent of it measured in dollars and cents. But to allow the expert to give such testimony not only puts him in the place of the jury, but permits him to indulge in mere speculation. Witnesses who are competent for that purpose may testify as to the value of the property before and after the alleged injury. But it by no means follows that the injury is the sole cause of the diminution if any exists. Whether it is or not or to what extent is for the jury

and not the witnesses to determine.    In *Roberts* v. *N. Y. E. R. R. et al.*, 128 N. Y. 464, PECKHAM, J., said : "The first question asked of this witness to which exception is taken * * * calls for his opinion as to the amount of damages. * * * The precise question which is to be determined by the Court and jury is by this interrogatory placed before the witness for his opinion and decision.    To permit it to be answered is beyond all question against the great mass of authority in this and other States."    Again quoting from the same case.    "Expert evidence of the actual value of real estate is proper and in many cases essential.    The present value of the property of the plaintiff can be proved by expert evidence, both the value of the fee and the rental value.    Both classes of value could also be proved by expert evidence, as of a time immediately prior to the building of this road.  They are opinions  based on facts which now exist or which once existed, and if the expert have knowledge of them, he should be permitted to state it.    As to what the value would have been under circumstances which never existed he knows and can know nothing, but must form an opinion wholly speculative in its nature, which opinion must be based on data perfectly easy for him to state, and from which when once stated, an ordinarily intelligent jury can draw as just and fair an inference of a possible yet conjectural value, as could the expert.    And that very inference must in some way be drawn by the jury, for it is the question it is called upon to decide."    *Roberts* v. *Railroad, supra.*

But it has often been said that it would be inconsistent to hold that testimony as to the exact amount of damage is not admissible, and at the same time admit proof of value before and after the injury, 2 *Lewis on Eminent Domain*, sec. 436; *Rogers on Expert Testimony*, sec. 153, leaving it to the jury only to make the simple calculation involved in subtracting the one value from the other.    But the error of this view, we think, consists in assuming that *that* is the only duty the jury have to perform in this respect.    We have already indicated our view in regard to the respective provinces of the jury and

the witnesses in this important matter. In *Railway Co.* v. *Gardner*, 45 Ohio, 323, the Supreme Court of that State held that the primary facts which enable the jury to determine the *extent* of the injury are the values of the land before and after the alleged *tort.* "If it be contended" said C. J. OWEN, "that when a witness has stated what in his opinion is the difference in the value of the land before and after the location of the road, or how much less it is worth after than before, he has substantially stated the substantive fact to be ascertained" (that is to say the amount of damage) "the obvious answer is that he is, by this form of inquiry (that is, the inquiry "How much is the damage") left to estimate in his own mind the amount of damages sustained and give this to the jury as the difference in value. There is no assurance that he will, in making his estimate take into account the actual value before and after the location of the road. Indeed there is no assurance that he may have an intelligent opinion of the value of the land affected, either before or after such location, except that he has qualified himself in the opinion of the Court as a witness." It is, of course, no answer to say that the witness may be cross-examined, for that he has never been considered a test of the competency of a witness or the admissibility of testimony.

We are of opinion, therefore, that it was error to have permitted experts to give their opinions as to the fact as well as to the exact amount of damage. What we have said covers all the exceptions relied on in the brief of the defendants. All others were abandoned at the hearing in this Court.

It follows that for the errors indicated the judgment must be reversed.

*Judgment reversed and new trial awarded.*

(Decided January 12th, 1905.)