# NEW YORK CONTINENTAL JEWELL FILTRATION COMPANY *v.* WYNKOOP.*

DAMAGES; DAMNUM ABSQUE INJURIA; NUISANCES; PREJUDICIAL ERROR.

1. Where a railroad company required by statute to lay its tracks and construct a tunnel at a given place in a city contracts with another to construct the tunnel, and the operation of the contractor's concrete mixer, crushing machines, and other appliances located near the mouth of the proposed tunnel constitutes a nuisance and results in injury and damage to an adjoining property owner, such damages are not *damnum absque injuria;* and the property owner is entitled to recover

---

*Nuisance—Legislative Authority.*—The effect of legislative authority upon liability for private nuisance, including, among other phases of the subject, nuisances created under railroad charters, is discussed and the American and English authorities presented in editorial note to *Louisville & N. Terminal Co.* v. *Lellyett,* 1 L.R.A. (N.S.) 49.

damages from the contractor for such injury, although the plant was not negligently, but was carefully, operated. (Following *Dana* v. *Rock Creek R. Co.* 7 App. D. C. 482.)

2. In an action by a property owner against a construction company engaged in the construction of a railroad tunnel in a city, where the evidence shows that the various injuries and discomforts suffered by the plaintiff were really caused by the operation of the machinery and appliances of the defendant's plant, although there is some evidence of noise and emission of smoke by railway trains operated on tracks near the tunnel by a railway company, the trial court properly overrules a motion by the defendant to direct a verdict on the ground that that plaintiff's evidence is such that the jury will not be able to apportion the damages to the plaintiff caused by the defendant, and the damages caused by the railroad company.

3. Where, during the trial of an action for damages by a property owner against a construction company, the plaintiff abandons his claim for damage to his property by reason of the diminution of its rental value, alleged to have been caused by defendant's acts, and the jury are told by the court, by stipulation of counsel, to disregard all evidence relating to rental value, the fact that the court in its charge to the jury, in illustrating the different kinds of damages which might result from such acts, incautiously discusses a possible damage to the plaintiff by the diminution of the rental value of his property, will not constitute error prejudicial to the defendant.

4. It is not error for the trial court, in an action by a property owner against a construction company to recover damages for maintaining a nuisance on adjoining land, to refuse to instruct the jury, at the request of the defendant, that the plaintiff cannot recover damages for inconvenience or annoyance suffered by members of her family, although her husband and a lodger in her house, in testifying concerning the existence of the alleged nuisance, have stated they were kept awake and were inconvenienced by the acts of defendant claimed to constitute the nuisance, as it would be useless to so caution the jury.

No. 1757.   Submitted April 8, 1907.   Devided June 4, 1907.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages resulting from the maintenance of an alleged nuisance.                          *Affirmed.*

The COURT in the opinion stated the facts as follows:

Mary A. Wynkoop, the appellee, sued the New York Continental Jewell Filtration Company, the appellant, and in the declaration alleged that she was the owner and occupant of the house at 413 New Jersey avenue, southeast, in Washington; that about March 1, 1903, the appellant and the Philadelphia, Baltimore, & Washington Railroad Company began to excavate and construct a tunnel from a point near the plaintiff's dwelling, at the intersection of New Jersey avenue and D street, southeast, extending northeastwardly, and in so doing maintained and operated, and still maintains and operates, steam shovels and other appliances, certain mixing plants and machinery for mixing concrete, steam engines and tracks; and between the last-mentioned date and the beginning of this suit unlawfully and injuriously caused large quantities of smoke and noxious and offensive gases and odors, and quantities of pulverized cement, dust, cinders, and the like, to be emitted, filling the air and causing the same to enter the house of the appellee, to the injury of its contents and to the inconvenience of the appellee and her family; and that the operation of the machinery both day and night destroyed the quiet enjoyment of her dwelling house, to the great injury of the health of the inmates and to the diminution of the value of her premises.

Before the trial the appellee amended her declaration so as to allege that the Manor Real Estate & Trust Company owned the land whereon the appellant's plant had been installed, and she dismissed her action as to the railroad company codefendant, and the trial proceeded against the appellant alone. The appellant's work complained of was performed upon the construction of the tunnel for the Philadelphia, Baltimore, & Washington Railroad Company, which by law the railroad company had been authorized and required to construct. The plant of the appellant occupied one half of the square 693, in the rear of houses fronting on New Jersey avenue and D street, and among them was the appellee's house. This plant included a steam shovel used in excavating the tunnel, operated during the

spring and summer of 1904 near the intersection of these streets, which was the location prescribed by act of Congress for the western end of the tunnel. After the steam shovel dug the earth, dump cars drawn by small electric engines removed it. These engines ran on narrow-gauge tracks extending upward on an incline trestle to a dumping platform in the rear of appellee's lot, 75 feet away from it. At the dump, freight cars drawn by steam engines carried away the earth over a siding to the main line of the railroad, the latter cars and locomotives belong-ing to this railroad. A concrete mixer was set up in the middle of this square, about 200 feet from the appellee's premises, and in it was manufactured the concrete used in the tunnel. Farther away, on the same square, a compressed-air plant, in which pneumatic power was generated to drive the appellant's engine and teams, was erected, and the plant was operated con-tinuously. It produced noise, smoke, and dust. The railroad engines and trains contributed to the noise and smoke, and the smoke and dust and odors thus constantly entered the appellee's house.

At the trial the appellee attempted to prove a diminution of the rental value of her house, but later requested the court to take from the jury all testimony relating to rental value, and by consent this testimony was withdrawn, and the court in-structed the jury not to consider it in making their verdict.

There was no evidence of a physical invasion of the plaintiff's land, and it was not disputed that the defendant's machinery, engines, and appliances were necessary for the prosecution of the work at the tunnel, and were constructed and operated care-fully; and there was no evidence that the same produced an unnecessary amount of noise, smoke, or dust.

At the close of the plaintiff's evidence the appellant asked the court to instruct the jury to return a verdict for the appellant, first, because the plaintiff's damages, if any, were occasioned by acts of the appellant which were authorized and required by law, and the matter was *damnum absque injuria;* secondly, because the damage was caused in part by other agencies than the appellant's plant; and from the evidence the jury could not

separate and apportion the damages. The court overruled this motion.

The appellant on its behalf offered to prove that it did its work under contract with the railroad mentioned, pursuant to the requirements of law, in accordance with plans prepared and permits granted by the commissioners of the District under legislative authority, and that the work was supervised and approved by the railroad company, and that the defendant was not negligent in performing the work, but used care in the operation of its plant to cause the least inconvenience to persons residing nearby. To all such evidence proffered the appellee objected, and the court sustained the objection. The appellant introduced evidence to show that the operation of its plant had not caused or emitted sufficient noise, dust, and smoke to injure the property or health of persons living nearby, and that the railroad cars and engines were regularly engaged in moving the earth loaded at the dumping platform.

The appellee abandoned the second count of her declaration, which alleged that the appellant's plant had been constructed and operated negligently. The jury returned a verdict for the plaintiff.

*Mr. James H. Hayden,* for the appellant:

1. The defendant's acts complained of were done under proper legislative authority and requirement, and, even if the plaintiff suffered damage as claimed, it was *damnum absque injuria,* and she is not entitled to recover. Act of Congress of February 28, 1903, entitled "An Act to Provide for a Union Railroad Station in the District of Columbia and for Other Purposes" (32 Stat. at L. 909) and supplemental acts of February 12, 1901 (31 Stat. at L. 767, 774). *Millard* v. *Roberts,* 202 U. S. 429; *Northern Transp. Co.* v. *Chicago,* 99 U. S. 635, 639–642; *Hamilton* v. *Vicksburg, etc., R. R.* 119 U. S. 280; *Marchant* v. *Pennsylvania R. Co.* 153 U. S. 380; *Benner* v. *Atlantic Dredging Co.* 134 N. Y. 156; *Booth* v. *Railroad,* 140 N. Y. 267; *Bellinger* v. *Railroad,* 23 N. Y. 42; *Ratcliffe* v.

*Brooklyn,* 4 N. Y. 195; *Garrett* v. *Elevated Railway,* 79 Md. 277; *O'Brien* v. *Baltimore Belt R. Co.* 74 Md. 363; *Baltimore & Potomac R. Co.* v. *Baptist Church,* 108 U. S. 317; and *Dana* v. *Rock Creek Railway,* 7 App. D. C. 482, are readily distinguishable from the case at bar. If the injury complained of had been the result of a physical encroachment upon the plaintiff's land, such as to cause her damage of a peculiar character, differing in kind from that sustained by her neighbors and the public in general, or damage which the law terms special, it might be held that, notwithstanding the legislative authority under which the filtration company was proceeding, it could be held liable as for a taking of private property for public use without compensation. But no such damage is either claimed by the plaintiff or proven. It may be that her house was a little nearer to some parts of defendant's plant than the houses of her neighbors, but, according to the evidence, all of them suffered inconvenience of the same kind. The fact that one of them suffered to a greater degree cannot convert his consequential damage into special damage. See *Crook* v. *Pitcher,* 61 Md. 510.

2. It appears, from plaintiff's evidence in chief and from all of the evidence, that an indefinite proportion of plaintiff's alleged damage was caused by certain agencies other than those of the defendant. No attempt was made to show what part of the damage was attributable to the defendant. It was error to permit the jury to make a guess at the amount. *Marble* v. *Worcester,* 4 Gray, 395, 397; *Patton* v. *Railroad Co.* 179 U. S. 659; *County Comrs.* v. *Wise,* 75 Md. 38.

3. There being no evidence with respect to the rental value of the plaintiff's property, or its diminution in consequence of the defendant's operations, it was error for the court to instruct the jury that, where the rental value of one man's property is diminished through the operations of another, conducted on his own land, a cause of action for damages equal to the rent lost accrues to the first owner.

4. The court below erred in refusing the defendant's prayer that the jury be instructed that the plaintiff could not recover

damages for inconvenience or annoyance which members of her family may have suffered in consequence of the defendant's acts complained of. Plaintiff's husband described at considerable length the inconvenience which he suffered in consequence of the defendant's operations, stating that he was unable to sleep in certain rooms of his house. Gertrude Young, another witness, testified that she was a lodger in plaintiff's house during a portion of the time covered by defendant's operations, and that she experienced great inconvenience while living there, in consquence of those operations. This testimony was calculated to influence the jury in determining the amount of their verdict. In view of the fact that plaintiff brought the action in her own behalf, and not in the capacity of next friend or guardian of any minor or other person, she was entitled to recover no damage except her own; and, in view of the testimony above referred to, the defendant was entitled to the allowance of its prayer.

*Mr. Charles A. Douglas* and *Mr. G. L. Baker* for the appellee.

*Mr.* Justice McComas delivered the opinion of the Court:

The eleven assignments of error involved several important questions.

First. The appellant contends that its acts complained of were done under proper legislative authority and requirement, and, even if the appellee suffered the damage found by the jury, it was a case of *damnum absque injuria,* and she was not entitled to recover. Now, the law relied on by the appellant authorized this railroad company to construct, maintain, and operate a double-track railroad commencing at a point on the railroad of said company near the crossing of Second street, southwest, and over certain streets and avenues, "thence passing under the intersection of D street and New Jersey avenue, C street, southeast, and D street, southeast, at the intersection with First street," etc. This act gives the railroad authority to construct and maintain the tunnel, with the tracks therein. It gives no authority to the appellant to erect and maintain the plant here

complained of, in the rear of appellee's premises. The material produced by the plant of appellant was necessary to be supplied to the railroad company at this point, which the law required the railroad company to construct and maintain. No provision of the law required or sanctioned the location of such a plant at this particular place, near by many dwelling houses, among which was the home of the appellee. The owner of the land permitted such location and operation of this plant. The acts of Congress relied on did not contemplate it, nor authorize this railroad company to permit or sanction such location, without reference to the property and rights of the appellee and others. Nothing in these acts of Congress authorizes or requires that the appellant's concrete mixer, crushing machines, power plants, and other appliances should be so placed that their proper use would thus unreasonably interfere with and disturb the residents on New Jersey avenue and D streets, southeast, in the comfortable enjoyment of their property; nor do these acts confer any license upon the appellant to use such a plant as it maintained and operated, in disregard of the private rights of others, with immunity for their invasion. The evidence does not show that this location must necessarily be had in order to carry on the work of the appellant. It is true the steam shovel had to be operated at this point, and the earth excavated had to be carried away from this point. The appellant for its convenience elected to maintain and operate its power house and all its machinery where it became a nuisance to the neighborhood, which substantially injured the appellee's property and comfort of life. The class of cases wherein it was sought to recover damages for injuries sustained by the action of national, State, or municpal authorities carrying on public works do not apply here. In *Dana* v. *Rock Creek R. Co.* 7 App. D. C. 482, this court denied the right of a railroad company, a quasi-public corporation, to do the acts in that case stated, for its own private purposes and benefits; and Mr. Justice Morris aptly said: "Now whatever may be the extent of the authority of the municipality to proceed without liability to the adjacent owners in the use of the public thoroughfares for public purposes, it cannot be that

either the municipality itself or the legislative authority can confer rights upon a private corporation, or upon a private individual, in derogation of the public right, and not in pursuance of it, that would justify such private corporation or individual in the invasion of the private rights of others, and constitute an exemption from liability."

In the case of *Baltimore & P. R. Co.* v. *Reaney,* 42 Md. 131, Judge Alvey said: "In this case the jury have found that the property of the appellee has been damaged to the extent of $3,000; and it would be a reproach to the law if the courts were required to determine that it was a case of *damnum absque injuria,* and that there was no redress for such a wrong. There is no reason why the appellee should be required to bear such a loss, it not being for any municipal benefit, but for the benefit of a private railroad corporation, with which he is no more concerned than any other individual of the state. If he could be required to bear this loss of $3,000, he could and would be required to bear the loss if it were to the full extent of the value of his property; and thus a party might have his house utterly destroyed, and yet be without a remedy to obtain redress. Such is not the state of the law, as applicable to a case like the present. * * * That there was no negligence or want of care in doing the work is no answer in a case like this. If the injury was the inevitable result of making the tunnel, then, to the extent that the appellee's property was actually injured, it was substantially taken for the use of the appellants' road, and, of course, should be paid for. It is not to be assumed that either the city authorities or the legislature of the state intended that the authority delegated by them should be exercised irrespective of the rights of private property; and, if it were clear that they did so intend, it is far from being certain that such a purpose could be accomplished. *Gardner* v. *Newburgh,* 2 Johns. Ch. 162, 7 Am. Dec. 526; *Eaton* v. *Boston, C. & M. R. Co.* 51 N. H. 504, 12 Am. Rep. 147; *Pumpelly* v. *Green Bay & M. Canal Co.* 13 Wall. 166, 20 L. ed. 557.

"That the excavation of the street for the tunnel was lawful,

and done in a lawful manner at the time, can constitute no defense to this action, if damages actually resulted from the work. There are many cases in which an act may be perfectly lawful in itself, and will continue to be so, until damage has been done to the property or person of another; but from the moment such damage arises the act becomes unlawful, and an action is maintainable for the injury."

In the present case this filtration company lacked the qualified sanction under which the quasi-public corporations in the cases to which we have referred sought protection. This private corporation as a private contractor performing work for this railroad company can find no shelter under statutes which authorize and require the railroad company to dig a tunnel and maintain and operate tracks therein. It is probable had the stone crusher and cement mixer and the power plant been located and maintained elsewhere, the injury which the jury found the appellee to have suffered might not have happened, but the filtration company elected to incur the risk of injuring the appellee. Although it was not guilty of a physical invasion, an injured party may recover in some cases, without such a taking, for consequential injuries. See *Baltimore Belt R. Co.* v. *Sattler,* 100 Md. 330, 59 Atl. 654. The court below did not err in excluding the evidence proffered by the appellant to show that its work complained of was performed under contract with this railroad company, and was part of the work which the law authorized and required the railroad company to execute, and to show that the appellant exercised due care to avoid unnecessary damage to the plaintiff and to the public.

Second. It is claimed the court below erred in refusing to instruct the jury to return a verdict for the defendant, because the evidence did not enable the jury to apportion the damages to the plaintiff caused by the defendant, and to separate it from damage caused by the cars and engines of said railroad company. There was no material evidence of injury caused by the railroad company. Wynkoop testified that several locomotives hauled loaded cars away from the dump, and emitted smoke, and made the noise incident to a moving train;

and another witness testified that the railroad company's engines burned soft coal and emitted smoke. The material evidence, however, was that it was the plant and machinery of the appellant which produced dirt, dust, smoke, cinders, and filled the air with fine particles of cement and stone, and that these things entered the doors and windows of the plaintiff, and that the loud noises, continuing day and night, from the various appliances and machines of the appellant, disturbed the plaintiff's sleep and comfort of living, and injured her health. The doctrine stated in *Patton* v. *Texas & P. R. Co.* 179 U. S. 658, 45 L. ed. 361, 21 Sup. Ct. Rep. 275, is not applicable to this case. Here the testimony did not leave any uncertainty, for all the testimony tended to show that the various injuries and discomforts for which the plaintiff sued were caused by the plant and machinery of the defendant.

Third. It is true the court, in illustrating in its oral charge the different kinds of damages which might happen in such a case as this, incautiously discussed a possible damage by diminution of rental value. After carefully examining the record and the charge,—because it had been granted by both sides that all evidence upon the subject of rental value should be withdrawn from the jury, the court had already informed the jury that, although they had heard evidence on the subject of rental value, such evidence had been ruled out and they should pay no attention to it in making up their verdict, and in substance said to them that there was no evidence in this case tending to show the rental value of the plaintiff's property nor the diminution of its rental value in consequence of the injury sued for,— we are convinced that the court's instruction as to the measure of damages in a case of diminution of rental value did not mislead the jury, who had been positively instructed that no evidence on the subject was to be considered by them, and that all evidence relating thereto had been withdrawn, before the court delivered its oral charge.

Fourth. The appellant was not injured by the court's refusal to instruct the jury that the plaintiff could not recover damages for inconvenience or annoyance suffered by members

of her family.  The plaintiff's husband did testify that in consequence of the operation of defendant's plant 'he could not sleep in certain rooms of the house, and a lodger in the house testified that from these operations she experienced inconvenience while in the house.  These witnesses testified concerning the existence of the nuisance, and it was useless to caution the jury not to allow the plaintiff damages on account of the testimony of the these witnesses.

We find no reason for reversing this judgment.  It must be *affirmed, with costs, and it is so ordered.*

A petition by the appellant, filed June 7, 1907, for a writ of error to the Supreme Court of the United States, was granted, and the writ allowed June 8, 1907.